901 A.2d 341

CATHERINE M. BROWN CONWAY, AS EXECUTRIX FOR THE ESTATE OF BERNARD F. CONWAY, DECEASED, PLAINTIFF–APPELLANT, v. 287 CORPORATE CENTER ASSOCIATES, A NEW JERSEY PARTNERSHIP; ANGELO CALI, JOHN CALI, AND EDWARD LESHOWITZ, ALL INDIVIDUALLY; AS PARTNERS AND AS GUARANTORS, DEFENDANTS–RESPONDENTS.

Argued January 30, 2006—Decided July 13, 2006.

*Catherine M. Brown Conway,* argued the cause pro se; (*Ms. Brown Conway,* attorney; *Theodore W. Geiser,* of counsel).

*Russell M. Woods,* argued the cause for respondents (*Woods & Trembulak,* attorneys; *Mr. Woods* and *Ellen Lewis Rice,* on the brief).

Justice WALLACE, JR. delivered the opinion of the Court.

The issue presented is whether the parol evidence rule bars admission of extrinsic evidence to explain the meaning of a bonus provision in a lawyer's retainer agreement when the written terms of the agreement appear to be clear. In the first trial of this matter, the court denied admission of extrinsic evidence to interpret the terms of the retainer agreement and found that the condition requiring a bonus, a zoning change, was satisfied. The Appellate Division reversed and held that the trial court should have considered extrinsic evidence of the parties' intent. At the second trial, the court concluded that the parties intended that to earn the bonus both a zoning change and access to the property were required. The Appellate Division affirmed. We hold that extrinsic evidence was properly admitted to explain the meaning of the bonus provision and affirm the judgment of the Appellate Division.

## I.

In 1981, defendants 287 Corporate Center Associates (Associates),[1] a New Jersey partnership, through its individual partners, Angelo Cali, John Cali, and Edward Leshowitz, purchased a 39.1–acre tract in Bridgewater Township, known as Lot 12, Block 6401.

---

[1] We use the terms Associates and defendants interchangeably.

Defendants planned to develop the property for subsequent sale or lease, but numerous issues had to be resolved before development could occur. Subsequently, Bridgewater split zoned the property for residential and commercial use.

Lot 12 is an irregularly shaped tract located near the confluence of Routes 22 and 287. Its southern boundary runs along Route 287 with lots abutting the property on all other sides. Frontier Road runs parallel to Route 287 and along the southeastern boundary of Lot 12. Access to Lot 12 from Frontier Road is limited because the intersection of Frontier Road and Route 22 allows only limited-use traffic.

Prior to the construction of Route 287 in the early 1980's, Foothill Road bordered Lot 12. However, when Route 287 was constructed, Foothill Road was rerouted to pass over Route 287, eliminating access from Lot 12 to Foothill Road. That realignment made it impossible for traffic to enter or exit from Lot 12.

In April 1993, Associates contacted attorney Bernard Conway to investigate the possibility of suing Bridgewater for its actions in essentially rendering the property undevelopable. Conway conducted background work but did not enter into any formal fee arrangement with defendants at that time. In 1994, Conway and defendants began exploring the merits of a lawsuit against Bridgewater for taking the property without compensation. On July 13, 1994, Conway forwarded to defendants a memorandum, a retainer agreement, and a draft of a federal complaint against Bridgewater. The memorandum explained the process of litigation, outlined the federal cause of action, and noted that the retainer agreement provided for a bonus to be paid if Conway was "successful in obtaining a zone change and the property [was] either sold or the partnership [was] successful in constructing a building and selling or renting it in the future."

The retainer agreement provided for a $50,000 retainer and an hourly billing rate of $325 with a notation that $28,028.90 had already been earned. In addition, the agreement provided for a bonus fee of $375,000 "[s]hould the lawsuit produce any modifica-

tion of the zone change which permits construction of any type, residential or commercial or the sale or lease of the property to a third person." If the bonus was earned, it was to be paid in three annual installments of $125,000 on January 2 of each year following the sale or lease of the property or issuance of a certificate of occupancy from the township.

Defendants signed the retainer agreement, paid the retainer fee of $50,000, and authorized Conway to file the complaint in federal court. The gist of the complaint was that the split zoning of Lot 12 and the realignment of Foothill Road effectively "denied all reasonable use of the property" and resulted in an unlawful taking without just compensation. The complaint sought a mandatory injunction requiring Bridgewater "to provide alternate access to Foothill Road from Lot 12." Conway filed the complaint in the United States District Court for the District of New Jersey on August 2, 1994. Bridgewater moved to dismiss the complaint because it was filed outside the statute of limitations period. The motion was granted, and defendants appealed to the Third Circuit Court of Appeals.

The appeal was assigned to the Honorable Harold A. Ackerman, U.S.D.J., for mediation. In compliance with the mediation program, Conway submitted a letter explaining that the "[o]nly possible way" for his clients to develop Lot 12 was "to have the municipality zone it one way or the other, residential or commercial, and provide access to Foothill Road." Conway informed the court that the case could be resolved by a change to a single zone and "an ability to construct something on this property with access to Foothill Road."

Conway attended a mediation session on June 9, 1995. The case was not settled at that time. Because Conway was being considered for a state judicial appointment, he arranged to have attorney Roy Kurnos replace him as Associates' attorney. On June 19, 1995, Conway prepared a memo to Kurnos outlining the status of the case. He mentioned the mediation session and that Judge Ackerman expected to settle the case before August 9,

1995, "[w]hich means they are going to have [to] re-zone and give us some access to Foothill Road." After summarizing the procedural status of the case, Conway said that it was all "academic if, in fact, we can get two things: 1. an access to Foothill Road and a change of the zone, not necessarily to office and land but to high density residential." Conway also attached a copy of his retainer agreement and suggested that Kurnos enter into "an agreement [with defendants] that they will continue ... under the same fee agreement which has a $200,000[2] kicker if they win the case in any way, shape or form." Kurnos did not follow Conway's suggestion. Instead, Kurnos negotiated a fee agreement with defendants at an hourly rate of $250 without a bonus provision.

Conway was appointed to the Superior Court on June 25, 1995, and Kurnos assumed the representation of Associates in the litigation. On October 5, 1995, Conway wrote to Associates stating that he had assigned all of his rights in the original retainer agreement to Kurnos and seeking confirmation that Associates would honor it. Associates never responded. Later, Kurnos informed Conway that his fee arrangement with Associates did not include the bonus provision.

Subsequently, on March 4, 1996, Bridgewater voted to rezone Lot 12 to a single commercial zone. Apparently, the federal action was never settled because on November 27, 1996, the Third Circuit affirmed the district court's dismissal of the complaint. *287 Corporate Ctr. Assocs. v. Twp. of Bridgewater*, 101 *F*.3d 320 (3rd Cir.1996).

At some point, Conway met with Associates to confirm that the bonus provision in the retainer agreement was still in force. Associates replied that the conditions for the bonus were not satisfied because the access issue was never resolved and the property had not been developed. On July 21, 1997, Conway filed a complaint against Associates seeking a declaration of his con-

---

[2] The retainer provided a $375,000 bonus rather than the $200,000 bonus referenced in the memo.

tractual rights and injunctive relief. Defendants filed an answer and moved for summary judgment, asserting that Conway had voluntarily withdrawn from representing them to become a judge. Conway submitted a certification in opposition to the summary judgment motion, and the motion was denied.

Following Conway's death on March 18, 2001, Catherine Brown Conway, the executrix of Conway's estate, pursued the action on behalf of the estate. Prior to trial, the court ruled that the memorandum and federal complaint were not admissible on the issue of the parties' intent in entering into the bonus arrangement because the retainer agreement was unambiguous. Therefore, no additional evidence was needed to understand it.

The trial judge awarded Conway's estate the $375,000 bonus fee plus legal fees and interest. The court found the zoning issue was settled at the second mediation session, which Conway attended, and that after Kurnos took over, defendants changed the scope of the work required. The court found that defendants, "knowing that they had the issue of the re-zoning in their back pocket, wanted to push for Foothill Road. This was their wish list, and it remained on their wish list, but it was not part of the retainer agreement." The court ordered defendants to pay Conway's estate $375,000 plus legal fees and interest.

Defendants appealed. In an unpublished opinion, the Appellate Division reversed and remanded for a new trial. The panel concluded that the court erred in excluding the extrinsic evidence defendants offered to prove the parties' intent regarding the scope of Conway's legal services and the conditions needed to earn the bonus. The panel found the retainer agreement, memorandum, and proposed federal complaint "forwarded to defendants under one cover letter constituted an integrated set of documents in which one could give meaning to another." The panel concluded that defendants were entitled to have the trier of fact consider the documents together to show that "access as well as re-zoning had to be obtained before Conway earned his bonus."

At the retrial, a different trial court found that the "very heart of what these defendants sought was relief that would provide them [with] the removal of split zoning and access to Lot 12," and that was what Conway "knew he had to accomplish when one reads the federal complaint." The trial court rendered a supplemental opinion pursuant to *Rule* 2:5–1b after plaintiff filed an appeal. In that opinion, the trial court found that the federal court action was not settled before Kurnos began to represent defendants and that "split zoning and access remained in dispute." In considering the meaning of the retainer agreement, the trial court concluded that

[a]n analysis of the retainer agreement indicates that the bonus fee which is at issue here could only be received upon (1) the accomplishment of the zone change; and (2) sale or lease of the property or construction on the property. The language of the zone change must be read with the descriptive clause which permits construction of any type with the sale or lease of the property to a third person. *There is no question that could not be accomplished without access because it is access that would allow for development and construction.*

[(Emphasis added.)]

The Appellate Division affirmed, concluding that substantial credible evidence supported the trial court's findings. We granted plaintiff's petition for certification. 185 *N.J.* 264, 883 *A.*2d 1061 (2005).

## II.

Plaintiff argues that parol evidence should not have been admitted because the retainer agreement was free from ambiguity. Further, plaintiff contends that the Appellate Division in the first appeal erred in finding that the three documents—the retainer, the memorandum, and the proposed complaint—were an integrated document. Plaintiff maintains that the integrated documents doctrine only applies when separate documents indicate a clear intent to form one agreement, which is absent here. Further, plaintiff argues that the extrinsic evidence only serves to make the contract unclear and, therefore, should not have been considered.

Defendants argue that the Appellate Division correctly interpreted New Jersey law governing the admission of parol evidence to allow extrinsic evidence of the circumstances and the context in which the parties entered into the agreement. Thus, defendants argue that parol evidence was admissible not to change the meaning of the retainer agreement but to explain it. Defendants also argue that the payment structure in the bonus provision supports the understanding that "Conway would benefit from the bonus fee if and when development of the property was permitted as the result of [Conway's] litigation strategy." That provision provided for three annual $125,000 payments following "sale or lease" or the issuance of a certificate of occupancy from Bridgewater. Because those conditions never were met, defendants contend that Conway was not entitled to the bonus.

## III.

In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document. *Restatement (Second) of Contracts* § 213 (1981). Although the parol evidence rule is easily framed, it "is attended with confusion and obscurity which makes it the most discouraging subject in the whole field of evidence." 9 *Wigmore on Evidence* § 2400, at 4 (Chadbourn rev. 1981). Not only is the parol evidence rule difficult to apply, it is a misnomer because it applies to documentary as well as oral evidence. *See id.* at 5. Moreover, we have noted that the parol evidence rule is a rule of substantive law, not a rule of evidence. *Atl. N. Airlines v. Schwimmer*, 12 *N.J.* 293, 302, 96 *A.*2d 652 (1953); *Restatement (Second) of Contracts* § 213 cmt. a (1981).

Under Professor Williston's restrictive view, parol evidence may only be admitted if the language of the writing is unclear. *See* E. Allan Farnsworth, *Contracts* § 7.12, at 502–03 (1982) (citing *Williston on Contracts* § 95 (3d ed. 1957)); *Restatement (First) of Contracts* § 230 cmt. a. Professor Corbin has advanced a more expansive view of the parol evidence rule, which was adopted in

the *Second Restatement of Contracts.* That view provides that "[a]ntecedent and surrounding factors that throw light upon . . . [the meaning of the contract] may be proved by any kind of relevant evidence." 3 *Corbin on Contracts* § 579 (West 1960); *see also Restatement (Second) of Contracts* § 214 ("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . the meaning of the writing, whether or not integrated.")

▇▇▇ This Court has followed Professor Corbin's expansive view. *See Schwimmer, supra,* 12 *N.J.* at 302, 96 *A.*2d 652. We consider all of the relevant evidence that will assist in determining the intent and meaning of the contract. As we explained in *Schwimmer,*

> [e]vidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity. The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant. The judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose. [*Id.* at 301–02, 96 *A.*2d 652 (citation omitted).]

▇▇▇ Within the constraints described in *Schwimmer,* we allow a thorough examination of extrinsic evidence in the interpretation of contracts. Such evidence may "include consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 221, 405 *A.*2d 393 (1979). "Semantics cannot be allowed to twist and distort [the words'] obvious meaning in the minds of the parties." *Schwimmer, supra,* 12 *N.J.*

at 307, 96 *A.*2d 652. Consequently, the words of the contract alone will not always control.

In sum, we permit a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties. Extrinsic evidence may be used to uncover the true meaning of contractual terms. It is only after the meaning of the contract is discerned that the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract. *Id.* at 304, 96 *A.*2d 652; *see also Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging,* 69 *Cal.*2d 33, 69 *Cal.Rptr.* 561, 442 *P.*2d 641 (1968).

In the present case, the question is whether the language in the retainer agreement indicating that Conway was entitled to a bonus if the lawsuit produced "any modification of the zone change which permits construction of any type, residential or commercial or the sale or lease of the property" was intended to mean that roadway access to the property was also required before the bonus was earned. Defendants produced extensive evidence to demonstrate that roadway access to the property was required before the bonus could be earned. In the memorandum that accompanied the retainer agreement, Conway explained that the gist of the legal action was a claim "for damages for the regulatory and actual taking of Lot 12 in its entirety and the portion as it enters into the realigned Foothill Road."

In the complaint, Conway outlined the history of Bridgewater's conduct affecting Lot 12 that formed the basis of Associates' takings claim. Conway asserted that the "realignment of Foothill Road" made it "impossible for traffic to exit to and from" Associates' property, and that the "split zoning of plaintiff's property . . . combined with the conditions imposed by the defendant's Planning Board's resolution of February 1984 . . . prohibit any kind of development, building or construction on Lot 12." Conway also claimed that the planning board's resolution made it "impossible for traffic to exit to and from plaintiff's property." In the damages clause, Conway sought a mandatory injunction directing

Bridgewater to zone the entire property commercial and to allow "reasonable access to Foothill Road" from plaintiff's property.

Tellingly, Conway stated in his position letter in the federal mediation that access was essential. He noted that the action was based on the "split zoning . . . and denial of access from the tract to Foothill Road after the municipality required an offsite improvement on Foothill Road to the very purpose of allowing access." Further, Conway wrote that the "[c]ase [could] be resolved by recognition that [his clients] ought to be entitled to have a single zone, and that [Bridgewater] should permit an ability to construct something on this property with access to Foothill Road."

Similarly, when Conway prepared the status memo to Kurnos, he wrote that settlement "means [Bridgewater is] going to have to re-zone and give us some access to Foothill Road." After setting forth the procedural status of the litigation, Conway concluded that it is "[a]cademic if, in fact, we can get two things: 1. an access to Foothill Road and a change of the zone, not necessarily to office and land but to high density residential."

The evidence presented at trial was more than sufficient to support the trial court's conclusion that "the proofs show . . . that rezoning and access was the intent of the parties at the time of the undertaking and to the extent the retainer agreement says otherwise or could be interpreted otherwise, it is construed against the draftsman in favor of the position asserted by the defendants."

In sum, the evidence clearly established that the parties intended the bonus would be earned only if Conway were successful in obtaining both a zoning change and access to the property to permit development. Because access to the property was not attained, the bonus was not earned.

IV.

The judgment of the Appellate Division is affirmed.

Justice RIVERA–SOTO, dissenting.

Applying a two-step analysis, the majority first reviews extrinsic evidence to interpret a written retainer agreement negotiated between sophisticated parties—one of whom was a lawyer and the other was represented by its own counsel—and, based on that extrinsic evidence, determines that the written retainer agreement is ambiguous. As a result, the majority requires that the same extrinsic evidence used to create the ambiguity be used to cure it. Because that analysis constitutes a misapplication of the parol evidence rule, I respectfully dissent.

The contractual provision at issue here provides in full as follows:

> In addition to the minimum time charged set forth below, it is agreed that you will incur an additional fee based upon the following: Should the lawsuit produce any modification of the zone change which permits construction of any type, residential or commercial or the sale or lease of the property to a third person, the firm shall be entitled to an additional $375,000 fee, payable $125,000 per year, due on January 2 of each year following the earlier of [certain enumerated] events. . . .
>
> Payment of these fees will be guaranteed by the individual partners of the partnership (i.e. John Cali and Angelo Cali).
>
> It is agreed that a memorandum that the property is subject to the encumbrance of the payment of these fees shall be filed with the Clerk's Office of Somerset County under Miscellaneous recorded liens in a format set forth as Exhibit A.

It is that provision that the majority determines is in need of interpretation and, ultimately, modification pursuant to the parol evidence rule. I disagree.

The majority properly recognizes that the parol evidence rule is one of substantive contract law, *ante*, 187 *N.J.* at 268, 901 *A.*2d at 346 (2006), and, in support of that proposition, the majority cites to *Atl. N. Airlines, Inc. v. Schwimmer*, 12 *N.J.* 293, 302, 96 *A.*2d 652 (1953). Although the majority later cites to *Schwimmer* at length, *ante*, 187 *N.J.* at 269–70, 901 *A.*2d at 347 (2006), it does not reference the passage of *Schwimmer* directly relevant to this case:

> The "parol evidence rule" is a rule of substantive law not related to interpretation or the admission of evidence for the purpose of interpretation. Oral testimony of facts relevant to meaning are not within that principle. Parol evidence cannot be said "to vary or contradict a writing until by process of interpretation it is determined what the writing means. . . . Such testimony does not vary or contra-

dict the written words; it determines that which cannot be varied or contradicted." The "parol evidence rule" purports to exclude testimony "only when it is offered for the purpose of 'varying or contradicting' the terms of an 'integrated' contract; it does not purport to exclude evidence offered for the purpose of interpreting and giving a meaning to those terms. The terms of any contract must be given a meaning by interpretation before it can be determined whether an attempt is being made to 'vary or contradict' them."

[Id. at 302, 96 A.2d 652 (citations omitted).]

Strict adherence to the *Schwimmer* rule is not only necessary but desirable because

it has long been the law in this State that when the contract is clear the court is bound to enforce the contract as it finds it. The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce the contract as it is written.

[*James v. Fed. Ins. Co.*, 5 N.J. 21, 24, 73 A.2d 720 (1950) (citing *Kupfersmith v. Del. Ins. Co.*, 84 N.J.L. 271, 275, 86 A. 399 (E. & A.1912); *Caruso v. John Hancock Mut. Life Ins. Co.*, 136 N.J.L. 597, 598, 57 A.2d 359 (E. & A.1947) (internal quotation marks omitted)).]

The analysis applied by the trial court that first determined this case, before the Appellate Division remanded for the admission of parol evidence to vary the terms of the written retainer agreement, is compelling. Granting an *in limine* application to prohibit the introduction of parol evidence to contradict or vary the terms of the written retainer agreement, that court held that

the retainer agreement did not include anything with regard to the getting access to Foot Hill Road. The retainer agreement is clear and unambiguous. The retainer agreement states when and under what circumstances [ ] the bonus—and I will call it a bonus—the $375,000 bonus would be paid. And there was nothing mentioned by either party in the retainer agreement with regard to the bonus being paid only upon obtaining access.

Consequently, I don't have any need for parol[ ] evidence to determine what the scope of the retainer agreement was. I'm finding that it's clear and unambiguous.

At the conclusion of the trial, and ruling on behalf of plaintiff, the court held that

[t]he retainer agreement language is clear and unambiguous. It specifically states as a condition that should the lawsuit produce any modification of the zone change of the property permitting either residential or commercial construction of any kind [plaintiff would be entitled to his success bonus].

The retainer agreement is absolutely devoid of any language whatsoever proposing access as a condition upon which the bonus of $375,000 would be paid.

The payment is predicated entirely on the obtaining of the zone change to allow the land to uniform development, and there is no meaning of access at all.

. . . .

[T]he retainer agreement was the complete and integrated expression of the parties, as evidenced by their acknowledgement and attestation of the agreement.

This is further evidenced by the handwritten correction that was made pertaining to the minimum fees that was added at the time of the signing and the presence of the two Calis, both professional developers, and their independent counsel, Thomas Rizk, Esquire.

Mr. Rizk was an experienced real estate and tax attorney and it seems clear would have undoubtedly raised an objection to the retainer in its signed format when he reviewed it and found it lacked what was claimed to be half the objective, that is the access.

. . . .

Mr. Rizk, as an attorney, would have been aware of the ramifications that would follow after reviewing the agreement which did not contain any mention of access.

The Court feels there is nothing that needs interpretation. Parol evidence is used only to aid a fact-finder in interpreting an ambiguous agreement. That is not the case in the present matter. This retainer agreement is unambiguous.

That analysis and its conclusions are legally unassailable. Therefore, I cannot join in the majority's use of extrinsic evidence to generate an ambiguity in an otherwise unambiguous writing, only to then use that same extrinsic evidence to "cure" the newly-found ambiguity. The proper paradigm instead is set forth in *Schwimmer*: although one may look to extrinsic evidence to interpret contractual terms, that extrinsic evidence cannot be used to vary or contradict the terms of an integrated and unambiguous contract. Because I find the written retainer agreement to be a clear integrated agreement that is free from ambiguity, I would reverse the Appellate Division and reinstate the August 7, 2002 judgment ordering the payment of the $375,000 bonus or success fees, together with all other proper relief.[1]

I respectfully dissent.

---

[1] Because her recovery exceeded 120% of the amount she set forth in a served and filed offer of judgment, *R.* 4:58–1 to –4, plaintiff originally also was awarded her attorneys' fees, litigation expenses, costs of suit and pre-judgment interest.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—6.

*For reversal and reinstatement*—Justice RIVERA–SOTO—1.