**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 15-1536 and 15-1610
_____

INTERLINK GROUP CORPORATION USA, INC.,

Appellant in No. 15-1536

v.

AMERICAN TRADE AND FINANCIAL CORPORATION;
ANATOLI TIMOKHINE

v.

ALEXANDER KARPMAN
_____

INTERLINK GROUP CORPORATION USA, INC.,

v.

AMERICAN TRADE AND FINANCIAL CORPORATION;
ANATOLI TIMOKHINE

Appellants in No. 15-1610

v.

ALEXANDER KARPMAN

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.:  2-12-cv-06179)

District Judge:  Honorable James B. Clark III

Submitted under Third Circuit LAR 34.1(a)
on February 8, 2016

Before:  FUENTES, KRAUSE and RENDELL, Circuit Judges

(Opinion filed: March 22, 2016)

O P I N I O N[*]

**RENDELL**, Circuit Judge:

This case is about a business relationship gone south. In 2005, Interlink Group Corporation, through its president Alexander Karpman, partnered with American Trade and Financial Corporation ("ATFC"), through its president Anatoli Timokhine, to export eggs from the United States to Russia and other former Soviet Union countries. Years later, in 2012, Interlink sued ATFC and Timokhine, alleging they had breached a non-compete agreement ("NCA") and their fiduciary duty to Interlink. In response, ATFC and Timokhine asserted several counterclaims for breach of contract, as well as counterclaims for unjust enrichment and promissory estoppel. ATFC and Timokhine also filed a third-party complaint against Karpman, alleging breach of fiduciary duty, fraudulent misrepresentation, and tortious interference with contractual relations. Interlink's claims and the counterclaims of ATFC and Timokhine went to a bench trial, where the District

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Court[1] rejected all of them. The parties appeal these rulings. We will affirm the District Court's order as to Interlink's claims for breach of the NCA and breach of fiduciary duty. But we will vacate its order as to ATFC and Timokhine's counterclaims and remand.

## I.      Background

In 2005, Interlink and ATFC started exporting eggs from the United States to Russia and other former Soviet Union countries. As part of their business arrangement, they each assumed certain duties. Interlink, as the face of the operation, conducted most negotiations related to the business and was the named party in all contracts with the U.S. egg suppliers and foreign customers. ATFC, for its part, drafted exclusivity agreements with the U.S. egg suppliers and managed Interlink's books, among other things. At the start of this relationship, Interlink and ATFC orally agreed to split the profits equally.

In April 2011, Interlink (via Karpman) sought to reduce ATFC and Timokhine's share of the profits. Karpman testified at trial that he told Timokhine that he was changing the ratio from 50/50 to 70/30 in Interlink's favor. By contrast, Timokhine testified that he rejected this modification, Karpman accepted his rejection, and they continued operating under the original 50/50 agreement through February 2012. As the basis for one of their breach of contract counterclaims against Interlink, ATFC and Timokhine claimed that Interlink still owed them profits under the parties' profit-sharing agreement.

---

[1] The parties consented to proceed before U.S. Magistrate Judge James B. Clark, III, *see* 28 U.S.C. § 636(c), and we therefore have jurisdiction pursuant to 28 U.S.C. § 1291. Hereinafter we refer to Judge Clark's decision as that of the District Court.

Karpman also testified that he had reduced ATFC and Timokhine's share because of Timokhine's poor job performance, an accusation on which Interlink based its breach of fiduciary duty claim against ATFC and Timokhine. He contended that Timokhine had made critical mistakes in drafting and executing the exclusivity agreements with some of their U.S. egg suppliers. For example, Timokhine had supposedly caused Morris Hatchery, one of Interlink's U.S. egg suppliers, to file a lawsuit against Interlink in Florida that resulted in the invalidation of the unlimited duration term in the exclusivity agreement.

In that lawsuit, Interlink counterclaimed against Morris Hatchery for breach of the agreement. In May 2012, a jury awarded Interlink $2,066,711.02, which Timokhine claims netted the company about $1,556,000.00 after deducting fees and costs. At trial, Timokhine contended that he and Karpman had agreed that Interlink and ATFC would split any judgment. Karpman, on the other hand, testified that he had never promised to split the judgment. As the basis for another breach of contract counterclaim against Interlink, ATFC and Timokhine claimed that Interlink owed them half of the judgment.

In August 2012, a little over four months after Interlink and ATFC's business relationship had ended, Timokhine signed an NCA with Karpman. It prohibited Timokhine from (1) disclosing any information about their egg export business, (2) seeking employment from or consulting with any Interlink customers or competing businesses, and (3) soliciting business from Interlink customers. It also stated that Timokhine was accepting $780,504.75 "as sufficient and due consideration for the faithful performance of his obligations under this agreement." (App. 1423.) Soon

4

thereafter, ATFC and Timokhine's lawyer informed Interlink by letter that the NCA was "void *ab initio*." (App. 1444.)

Interlink claimed that ATFC and Timokhine breached the NCA. In April 2012, after Interlink and ATFC's business relationship had ended but before Timokhine signed the NCA, Keith Smith Company Inc., one of Interlink's U.S. egg suppliers, hired ATFC to broker egg deals with Russian buyers. And starting on August 7, 2012, which was after Timokhine had signed the NCA, Timokhine sent several emails to Keith Smith Company Inc. that Interlink argued demonstrate that ATFC and Timokhine breached the NCA.

After a bench trial, the District Court granted judgment against Interlink on its claims against ATFC and Timokhine for breach of the NCA and breach of fiduciary duty. It also granted judgment against ATFC and Timokhine on their counterclaims against Interlink for breach of contract, unjust enrichment, and promissory estoppel, all of which emanated from Interlink's alleged failure to pay ATFC and Timokhine profits from the egg business and their half of the Florida judgment. The parties appeal these rulings.

## II. Standard of Review

On appeal from a bench trial, we "review[] a district court's findings of fact for clear error and its conclusions of law *de novo*." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282–83 (3d Cir. 2014). "A finding of fact is clearly erroneous when it is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Berg Chilling Sys., Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004) (quotation marks and citations omitted). "For mixed questions of law and fact we apply the clearly erroneous standard except that

5

the District Court's choice and interpretation of legal precepts remain subject to plenary review." *VICI Racing*, 763 F.3d at 283 (quotation marks and citation omitted).

### III.    Interlink's Appeal

Interlink appeals the District Court's grant of judgment against it on its claims against ATFC and Timokhine for breach of the NCA and breach of fiduciary duty. We discern no reversible error in these rulings, and so we will affirm the District Court.

Interlink argues that it established at trial that ATFC and Timokhine breached the NCA by sending (1) the emails to Keith Smith Company Inc.; and (2) the letter from ATFC and Timokhine's attorney to Interlink stating that the NCA was void *ab initio*.

The District Court properly rejected these arguments. It found that the emails at issue that Timokhine had sent to Keith Smith Company Inc. "evidence a desire to end the business relationship he had previously established with Keith Smith prior to signing the NCA and discuss how Timokhine wished to send out letters indicating his removal from the egg shipping industry." (App. 23.) Interlink selectively highlights certain language from these emails in arguing that Timokhine breached the NCA, but, on balance, the District Court correctly concluded that the emails reflect Timokhine's desire to end his relationship with Keith Smith Company Inc.—an action not expressly forbidden by the NCA's terms. Indeed, Eddy Slick, a Keith Smith Company Inc. representative, testified that his understanding of the emails was that they were meant to wind down any business relations between ATFC and Keith Smith Company Inc. As for the lawyer's letter to Interlink stating that the NCA was void *ab initio*, the District Court properly decided that the letter was not "in and of itself a breach of the NCA," as Interlink had not submitted

6

any evidence that ATFC and Timokhine had actually violated the NCA. (App. 24 (citing *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013).)

Regarding its breach of fiduciary duty claim, Interlink contends that it shared a fiduciary relationship with ATFC and Timokhine in which it was the principal and they were its agents. For that reason, according to Interlink, ATFC and Timokhine owed it a duty to exercise reasonable skill and care when acting on its behalf, a duty that they breached with Timokhine's missteps in connection with the exclusivity agreements.

The District Court properly rejected this argument. It correctly concluded that Interlink and ATFC/Timokhine were engaged not in a principal-agent relationship but in a joint venture, *see, e.g.*, *Wittner v. Metzger*, 178 A.2d 671, 675 (N.J. Super. Ct. App. Div.), *cert. denied*, 181 A.2d 12 (1962), and that as partners in a joint venture they owed each other a statutory duty not to engage in "'grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law,'" (App. 33 (quoting N.J. Stat. Ann. § 42:1A-24).) And, as the District Court also correctly concluded, Interlink offered no evidence that any of ATFC and Timokhine's challenged actions rose to the level of gross negligence or intentional misconduct. Rather, they were, at most, mistakes or courses of action that were not successful to the extent that Interlink desired. *See, e.g.*, *Stelluti v. Casapenn Enters., LLC*, 975 A.2d 494, 508 n.6 (N.J. Super. Ct. App. Div. 2009), *aff'd*, 1 A.3d 678 (N.J. 2010) (equating "gross negligence" with "palpably unreasonable" or "willful and wanton" conduct); *Banks v. Korman Assocs.*, 527 A.2d

7

933, 934 (N.J. Super. Ct. App. Div. 1987) (describing "gross negligence" as constituting "an indifference to consequences").

## IV. ATFC and Timokhine's Cross-Appeal

ATFC and Timokhine cross-appeal the District Court's grant of judgment against them on their counterclaims against Interlink for breach of contract, unjust enrichment, and promissory estoppel. They argue that the District Court erred because it rejected all of these counterclaims based on an unsupported factual finding that it made earlier in its opinion while analyzing the consideration underlying the NCA. We agree.

Before the District Court considered whether ATFC and Timokhine had breached the NCA, it examined whether the agreement was supported by valid consideration. As mentioned earlier, the NCA contained a provision detailing the consideration paid by Interlink to ATFC and Timokhine for their agreement to abide by the NCA's terms:

> Since [ATFC/Timokhine] is leaving a business relationship with [Interlink], [ATFC/Timokhine] agrees to accept the sum of 780,504.75 ($       ) and other good and valuable consideration, the sufficiency of which is hereby acknowledged, as sufficient and due consideration for the faithful performance of [ATFC/Timokhine's] obligations under this agreement.

(App. 1423.)

Despite this unambiguous statement, the District Court concluded that the $780,504.75 was consideration not only for the NCA but also for ATFC and Timokhine's agreeing to release their claims to (i) any profits that Interlink still owed them, and (ii) the one-half of the Florida judgment to which they claimed entitlement. It stated, "Given all of the testimony and all of the circumstances surrounding the parties' relationship at that time, it appears most likely to the Court that the payment to Timokhine of $780,504.75

8

and the signing of the NCA represented an effort by both sides to come to some sort of overall agreement concerning all of their claims against each other and to finally part ways." (App. 20.) The District Court thus "conclude[d] that the $780,504.75 constitutes valid consideration for both the NCA *and* for the discharge of any remaining legal obligations under the profit-sharing agreement." (*Id.* at 20–21.)

Later in the opinion, the District Court relied on this finding to reject ATFC and Timokhine's counterclaims for breach of contract, unjust enrichment, and promissory estoppel. For example, in rejecting their breach of contract counterclaims, the District Court first referenced how earlier it had found "that the $780,504.75 paid from Interlink to Defendants constitutes both the profits owed to Defendants pursuant to the egg shipping business plus the consideration for the NCA." (App. 25.) It therefore determined that "there is no breach of contract by [Interlink] or Karpman of the profit-sharing agreement in the egg shipping business, or at the very least, [that] any breach that existed when Karpman refused to pay the money following Timokhine's exit from the business has been satisfied by the subsequent payment of the $780,504.75." (*Id.*)

The District Court erred in deciding the consideration issue on which it based its rejection of ATFC and Timokhine's counterclaims. While the District Court itself cited no authority allowing it to consider evidence outside of the NCA, New Jersey courts do allow "broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties." *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006). Indeed, even in a case such as this one where the agreement was unambiguously clear that the $780,504.75 was consideration solely for the NCA, the New Jersey Supreme

9

Court has indicated that parol evidence may nonetheless be used to elucidate the parties' intent. *See id.* at 346–48. Here, however, even assuming that the District Court was within its authority to consider parol evidence, it cited no specific record evidence in concluding that the $780,504.75 "most likely" constituted consideration both for the NCA and for ATFC and Timokhine's agreeing to give up any claims that they had against Interlink for unpaid profits and for half of the Florida judgment. *See id.* at 347–48 (pointing to specific pieces of extrinsic evidence that informed the court's interpretation of contractual provisions); (App. 20.) Rather, it vaguely cited "all of the testimony" and "all of the circumstances." (App. 20.) But we identify no evidence supporting that conclusion as to the parties' intent or agreement.

We will thus vacate the District Court's order granting judgment against ATFC and Timokhine on their counterclaims and remand so that the court can either articulate the legal authority and record evidence supporting its ruling on the consideration issue or resolve the factual disputes underlying the counterclaims and decide them on their merits.