**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1834-22

PRITCHARD INDUSTRIES,
INC.,

    Plaintiff-Appellant,

v.

EATONTOWN BOARD
OF EDUCATION,

    Defendant-Respondent.

Submitted February 26, 2024 – Decided March 21, 2024

Before Judges Sabatino and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3648-20.

Skoloff & Wolfe, PC, attorneys for appellant (Patrick T. Collins, on the briefs).

Collins, Vella and Casello, attorneys for respondent (Dennis Anthony Collins, on the brief).

PER CURIAM

This litigation stems from the nonpayment of money that defendant Eatontown Board of Education (the "School Board") allegedly owed to a custodial services contractor, plaintiff Pritchard Industries, Inc. ("Pritchard"). The School Board asserts Pritchard failed to meet minimum staffing requirements and improperly billed the School Board for hours that staff had not worked.

The trial court granted summary judgment to the School Board, dismissing Pritchard's claim to recover $92,297.30 for staff hours not worked. Pritchard now appeals, contending the court misinterpreted the terms of the contract between the parties. It asserts the School Board received the benefit of its contractual bargain because the school facilities were indisputably cleaned on the short-staffed days. Pritchard further contends the School Board's sole remedy under the contract is a $50 penalty per employee per shift, which has already been withheld by the School Board. In the alternative, Pritchard argues the trial court's award unjustly enriches the School Board.

For the reasons that follow, we vacate the entry of summary judgment and remand for a trial or evidentiary hearing. The trial or hearing shall ascertain the probable intent of the parties concerning the monetary consequences of Pritchard's failure to supply the promised number of custodians on various days

2

during the contract period, and, in particular, whether the $50 penalty was intended to serve as an exclusive remedy for short-staffed days.

## I.

Because we are remanding for further development of the record and additional findings, we need not recite the facts definitively or comprehensively. The following summary will suffice for present purposes.

After competitive bidding under the Public Schools Contracts Law, N.J.S.A. 18A:18A-1 to -68, Pritchard was awarded a contract to serve as the School Board's custodial services provider for a two-year period from July 1, 2016 through June 30, 2018.

Both parties agree Pritchard adequately cleaned the schools during the contract period. However, on certain dates Pritchard did not provide, on site, the number of custodians specified in the contract. Consequently, the School Board withheld $92,297.30 in custodian wages that Pritchard had charged the School Board for employees who were absent on those dates.

The School Board argues the contract entitles it to withhold such funds, and to also assess a $50 penalty per shift when Pritchard failed to provide enough custodial staff to meet "minimum staffing requirements" specified in the contract. Pritchard concedes that the $50 penalty was properly imposed, but it

A-1834-22

appeals the trial court's finding that the School Board was also entitled to deduct the wages of absent employees.

Pritchard contends the $50 penalty is a liquidated damages provision that was intended to be the exclusive remedy for any failure to deploy enough custodians. Pritchard maintains the trial court should not have made a better contract for the School Board than the one that was bid and awarded.

The School Board, in turn, argues that the $50 penalty was not an exclusive remedy, and that it was also entitled to withhold employee wages for unfilled shifts when Pritchard did not furnish the promised number of custodians.

The key contractual provisions germane to this dispute are set forth in the bid documents and the parties' ensuing signed agreement. The following provisions from the bid documents are particularly relevant:

> Employees' Salaries and Fringe Benefits. In the proposal, bidder must state proposed wage rates for Evening/Second Shift Manager/Supervisor, custodial and maintenance staff. The Contractor will establish the Terms and Conditions under which any employees will be hired. The Contractor will have the sole responsibility to compensate its employees including all applicable taxes, insurances and Workers Compensation.
>
> All Contractor employees will comply with all rules of the District. Employees of the Contractor must be

4 <span>A-1834-22</span>

thoroughly trained, qualified and capable of performing the work assigned to them. Employees of the Contractor must be capable of both understanding and speaking English in order to take direction from appropriate District personnel in the event of an emergency or under circumstances where immediate action is necessary to protect persons or property. Employees of the Contractor will not socialize with any students of the District. All penalties shall be deducted from the contract amount due upon written notification to the Contractor for any week(s) that the minimum staffing levels have not been met.

[(Emphasis added).]

The underscored last sentence of the above provision, referring to "penalties," corresponds to the $50 "penalty" referred to in the following section of the bid documents concerning absent employees:

Employee Absences and Penalties. The Contractor must anticipate employee absences and provide the district with an adequate backup plan for loss of work time associated with terminations, sick time and vacation. It is the expectation of the School District that the minimum staff levels will be maintained each night during the school year. Therefore an adequate supply of substitutes or coverage must be kept in order to ensure full coverage during the school year. Any time the Contractor does not provide full minimum staffing during the life of the contract, the District has the option to penalize the Contractor. The calculation shall be confirmed by reviewing detailed payroll reports, which must be provided by the Contractor monthly. The District may assess a penalty of $50.00 per employee per day for less than full minimum staffing. All penalties shall be deducted from the

5

contract amount due upon written notification to the Contractor for any week(s) that the minimum staffing levels have not been met. All employees of the Contractor must punch a time card daily, including the Evening/Second Shift Manager/Supervisor.

[(Emphasis added).]

Additionally, the bid documents address the grounds and procedures enabling the School Board to terminate the contract, and specify the damages that the contractor might owe the School Board upon breaching the contract:

41. Termination of Contract. If the Board determines that the contractor has failed to comply with the terms and conditions of the bid and/or proposal upon which the issuance of the contract is based or that the contractor has failed to perform said service, duties and or responsibilities in a timely, proper, professional and/or efficient manner, then the Board shall have the authority to terminate the contract upon written notice setting forth the reason for termination and effective date of termination.

Termination by the Board of the contract does not absolve the contractor from potential liability for damages caused the District by the contractor's breach of this agreement. The Board may withhold payment due the contractor and apply same towards damages once established. The Board will act diligently in accordance with governing statutes to mitigate damages. Damages may include the additional cost of procuring said services or goods from other sources.

[Emphasis added.]

6

As to the final sentence of this above provision, we note the School Board does not claim it procured replacement custodians from other sources or purchased additional goods from others.[1]

Pritchard sued to collect the sums the School Board withheld for the understaffed days. Following document discovery without depositions, both parties cross-moved for summary judgment.

Upon considering the above contractual terms and other documents submitted by the parties, the motion judge granted summary judgment to the School Board in part and denied it in part. The judge denied summary judgment to Pritchard on its cross-motion.

First, the judge granted the School Board summary judgment dismissal of Pritchard's claim for the $92,297.30 that the School Board deducted for insufficient staffing of shifts.

Second, the judge denied summary judgment regarding Pritchard's claim for $31,126.69 in additional maintenance work allegedly performed, finding genuine factual disputes concerning the "accuracy and documentary support" for

---

[1] Nor does it appear that the School Board ever elected to terminate the contract. The School Board's accounting of hours missed runs the entire period of the contract, including the final month of June 2018. The record does not indicate whether Pritchard was prevented from bidding for the next contract period or successfully renewed the contract.

those amounts.  The parties thereafter settled this latter aspect of Pritchard's claims.

This appeal by Pritchard ensued.

II.

In evaluating Pritchard's contractual claim to the $92,297.30 in withheld wages, we are guided by familiar principles of summary judgment practice and contract law.

We review the trial court's ruling on the cross-motions for summary judgment de novo.  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "[W]e determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Ibid. (quoting R. 4:46-2(c)). The court accords no special deference to the trial court's assessment of the documentary record, as the decision to grant or withhold summary judgment does not hinge upon a judge's determinations of the credibility of testimony rendered in court, but instead amounts to a ruling on a question of law.  See Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

Here, Pritchard's claim was dismissed, as the trial court phrased it, "entirely [as] a matter of contract interpretation" because the parties agreed on the underlying facts. Hence, the court's contract ruling is subject to de novo review on this appeal. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011).

When interpreting a contract, "a court must try to ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009). Generally, interpretations of contract terms "are decided by the court as a matter of law unless the meaning is both unclear and dependent on conflicting testimony." Ibid. (quoting Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001)).

If "the provision at issue is subject to more than one reasonable interpretation, it is ambiguous, and the court may look to extrinsic evidence as an aid to interpretation." Cypress Point Condo. Ass'n, Inc. v. Adria Towers, LLC, 226 N.J. 403, 415-16 (2016) (quotation omitted). Where there is ambiguity of meaning, courts "allow a thorough examination of extrinsic evidence. . . ." Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006). "Such evidence may include consideration of the particular contractual

provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." Ibid. (quoting Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)).

The present dispute also implicates legal principles of contract damages. "Under contract law, a party who breaches a contract [such as Pritchard here] is liable for all of the natural and probable consequences of the breach of that contract." Totaro, Duffy, Cannova & Cov. Lane, Middleton & Co., , 191 N.J. 1, 13 (2007) (quoting Pickett v. Lloyd's, 131 N.J. 457, 474 (1993)). Although a non-breaching party, such as the School Board here, need not demonstrate "the exact amount of the loss," "the loss must be a reasonably certain consequence of the breach." Id. at 14 (quoting Donovan v. Bachstadt, 91 N.J. 434, 444 (1982)). Damages must be proven with reasonable certainty. V.A.L. Floors, Inc. v. Westminster Cmtys., Inc., 355 N.J. Super. 416, 426 (App. Div. 2002); see also Model Jury Charge (Civil), 8.45, "Breach of Contract" (rev.Dec. 2014).

III.

We now proceed to apply these principles, de novo. At the outset, we must underscore that Pritchard neither contests its liability for the contractually specified penalty of $50 per employee per shift, nor claims the $50 penalty is an

10

unreasonable liquidated damages clause. Such clauses are "deemed presumptively reasonable" under New Jersey law. Wasserman's Inc. v. Twp. of Middletown, 137 N.J. 238, 252 (1994). That reasonableness depends on "whether the set amount 'is a reasonable forecast of just compensation for the harm that it caused by the breach' and whether that harm 'is incapable or very difficult of accurate estimate.'" Id. at 250 (quoting Westmount Cnty. Club v. Kameny, 82 N.J. Super. 200, 206 (App. Div. 1964)).

As the motion judge recognized, the plain language of the bid documents and contract makes clear that Pritchard was liable for the $50 amount, literally denoted as a "penalty," for "[a]ny time [it did] not provide full minimum staffing during the life of the contract." In those situations, as we noted above, the School Board "has the option to penalize the Contractor. The calculation shall be confirmed by reviewing detailed payroll reports, which must be provided by the Contractor monthly." Specifically, the School Board "may assess a penalty of $50.00 per employee per day for less than full minimum staffing. All penalties shall be deducted from the contract amount due upon written notification to the Contractor for any week(s) that the minimum staffing levels have not been met." This penalty obligation, which Pritchard does not challenge, is clear and unambiguous.

11

What is unclear, however, and which propels the present appeal, is whether the $50 penalty is the exclusive compensation recoverable by the School Board for understaffing. The contractual provisions are silent on this point. As we noted above, the bid documents emphasize the importance of the contractor providing full minimum staffing of custodians. They declare that "[i]t is the expectation of the School District that the minimum staff levels will be maintained each night during the school year. Therefore an adequate supply of substitutes or coverage must be kept in order to ensure full coverage during the school year."

But the bid documents and contract do not specify what, if any, additional sums may be recoverable by the School Board, over and above the $50 penalty, except for the costs of replacement custodians and supplies in the event of a termination. No such replacement custodians or supplies were obtained by the School Board, and the School Board apparently did not terminate the contract before it expired.

So what, then, are the School Board's additional damages? Stated differently, what exactly did the School Board bargain for that it did not receive? Pritchard contends that the School Board received the ultimate service it wanted, i.e., clean school buildings. The School Board, on the other hand, contends that,

12

beyond having clean schools, it bargained for a specified minimum number of custodians on the premises. However, the consequences of Pritchard's failure to sufficiently staff the schools are not unambiguously spelled out in the contract documents beyond the $50 penalty. Although we might speculate here about what those consequences might have been, the summary judgment record is inadequate to make those assumptions.

The School Board contends in its brief the $50 penalty was only meant to serve as a disincentive to breach, and that it was not meant to be a reasonable approximation of the value of the absent custodial staff. The School Board estimated that value by examining the wage rates that Pritchard would have paid to the missing custodians had they worked those shifts. Given the paucity of the record, we cannot tell if that approximation is a reasonable and mutually intended method of calculating damages, or whether holding Pritchard responsible for that sum plus the $50 penalty would be an inequitable double recovery. See Finderne Mgmt. Co. v. Barrett, 402 N.J. Super. 546, 580 (App. Div. 2008) (noting our State's "strong public policy against permitting double recoveries").

The limited discovery exchanged in this case does not presently contain adequate extrinsic proof of what the parties mutually intended. The parties have

13

taken contradictory positions on the subject, which suggests that any witnesses who are deposed or who testify in court will present conflicting assertions.[2] The credibility of those witnesses should be evaluated, firsthand, by the trial court.

Consequently, we must vacate—without prejudice—summary judgment and remand this matter for a trial or plenary hearing on the lingering disputes of fact spotlighted in this opinion. On remand, the trial court shall have the discretion to allow depositions and other supplemental discovery. A case management conference shall be convened within thirty days to plan the remand.[3]

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] In this regard, we note the explanation set forth in the affidavit of the School Board's business administrator, who attested that the $50 penalty was inserted "for the employees [who] were not provided to cover damages which were difficult to calculate." The affidavit does not specify the precise nature of such hard-to-calculate damages encompassed by the penalty. Meanwhile, Pritchard's director of New Jersey operations asserted in his certification that his company bid on the contract based on an assumption that "where a custodian was absent, as was sure to occur . . . [Pritchard] would be exposed to a $50 per person per day assessment" and that would comprise "the remedy" for such absences.

[3] Pritchard's alternative claim of unjust enrichment can be addressed, if necessary, on remand by the trial court.

A-1834-22