**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3274-24

GEORGE NTIM,

    Plaintiff-Appellant,

v.

CUBESMART
MANAGEMENT, LLC,

    Defendant-Respondent.

_____

Argued December 2, 2025 – Decided December 15, 2025

Before Judges Chase and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0954-25.

Michael J. Paragano argued the cause for appellant (Nagel Rice, LLP, attorneys; Bruce H. Nagel, on the briefs).

Gary N. Smith argued the cause for respondent (Kerley Walsh Matera & Cinquemani, PC, attorneys; Gary N. Smith, on the brief).

PER CURIAM

Plaintiff George Ntim appeals from an order granting defendant Cubesmart Management LLC's motion to stay the matter and compel arbitration. Because the trial court decided disputed factual issues regarding the enforceability of a rental contract without conducting an evidentiary hearing, we vacate the order and remand for proceedings consistent with this opinion.

I.

Since 2018, plaintiff has rented a storage unit from defendant. In the unit, he stored, among other items: valuable sports memorabilia, records, and many personal effects related to plaintiff's charitable activities.

At no time during the rental period did the parties enter into a written lease agreement. Each year, the parties' practice was to verbally renegotiate a thirteen-month rental lease agreement, and plaintiff would pay the fee for the thirteen-month term before it started. Plaintiff contends that this practice of renewing the rental lease continued until December 2023.

In the fall of 2023, as the lease term neared its end, plaintiff asserts that he reached out to defendant "in an attempt to negotiate a new lease, but [his] calls were not returned." Plaintiff made further attempts to reach defendant's staff to negotiate a new lease and resolve his outstanding balance to no avail.

2

Plaintiff contends that he continued to make efforts to reach defendant's staff into January 2024.

In January 2024, defendant sent plaintiff a written rental agreement. A notice attached to the agreement alerted plaintiff that "action was required" and stated in bold:

> You are receiving this Notice because your Cube will automatically be subject to the enclosed self-storage lease agreement thirty (30) days after the date of this Notice ("DATE") [] (March 1, 2024)[.]

It further specified:

> Please be advised that, upon payment of any and all past due balance(s), you have the right to vacate your Cube and terminate your tenancy at any time before the Effective Date if you do not agree to the terms of the self-storage lease agreement. Your termination notice must be in writing and delivered to the Facility Address above. If we do not receive your termination notice before the effective date, the terms of the enclosed self-storage lease agreement will govern your use of the Cube.

Regarding a signature, the notice explained:

> Please sign the enclosed self-storage lease agreement[] where indicated and return (1) original self-storage lease agreement to us in the enclosed envelope. We are requesting your signature for our files; however, the enclosed restated self-storage lease agreement will govern your use of the Cube on and after the Effective Date even if we do not receive your signature.

A-3274-24

The lease agreement included a "[b]inding [a]rbitration" provision requiring that any dispute arising from the agreement "will be finally and exclusively resolved by binding arbitration."

Upon receipt of this new written agreement, plaintiff continued reaching out to defendant; however, plaintiff did not respond to the notice or formally reject the lease agreement. Plaintiff asserts that he continued negotiations with defendant's staff before and after the March 1 deadline, making multiple calls and sending an email to defendant's chief executive officer on March 29, 2024.

On April 1, 2024, defendant renewed its "take it or leave it" offer, proposing that plaintiff "pay $394.00 per month for the prior months and a rate of $199.00 going forward." On April 9, 2024, plaintiff received a voicemail from defendant's Senior Vice President, and upon returning the call, "was advised . . . for the first time, that the contents of his unit had been sold." Defendant subsequently mailed plaintiff a check for $3,670.70, purporting to represent the surplus proceeds from the sale of plaintiff's stored belongings.

In March 2025, plaintiff filed an order to show cause and verified complaint regarding the whereabouts of the contents of the storage unit. In response, defendant filed a cross-motion to compel arbitration pursuant to the arbitration provision contained in the written lease. On May 9, 2025, based on

the papers submitted, the court issued an order and accompanying written decision, finding the written agreement and the arbitration clause therein enforceable, and determined that plaintiff's claims fell within the arbitration provision. The court stayed the case and directed the parties "to commence arbitration of the pending matter before a mutually agreed upon arbitrator." This appeal followed.

II.

"Orders compelling arbitration are deemed final for purposes of appeal." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); see also R. 2:2-3(b)(8). We review such determinations de novo. Hirsch, 215 N.J. at 186. In conducting our de novo review, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch, 215 N.J. at 186.

"The fundamental elements of contract formation are mutual asset, offer and acceptance, [and] consideration." Fazio v. Altice U.S., 261 N.J. 90, 103 (2025) (alterations in original) (quoting Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 65 (2024)) (internal quotation marks omitted). "A contract arises from [an] offer and acceptance and must be sufficiently definite that the performance to be rendered by each party can be ascertained with

A-3274-24

reasonable certainty." Goldfarb v. Solimine, 245 N.J. 326, 339 (2021) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)) (internal quotations omitted). Further, "[t]he parties are bound by the contracts they make for themselves, with the understanding that 'a meeting of the minds is an essential element to the valid consummation' of any agreement." Barr v. Barr, 418 N.J. Super. 18, 32 (App. Div. 2011) (quoting Ctr. 48 Ltd. P'ship v. May Dep't Stores Co., 355 N.J. Super. 390, 406 (App. Div. 2002)).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442, (2014) (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424, (App. Div. 2011)). "[A]n arbitration provision cannot be enforced against an employee who does not sign or otherwise explicitly indicate his or her agreement to it." Leodori v. Cigna Corp., 175 N.J. 293, 306 (2003).

III.

Guided by these governing principles, we address the enforceability of the unsigned lease agreement and its arbitration provision. Without an evidentiary hearing or oral argument, the trial court determined the written lease agreement was self-executing, and therefore, "automatically renew[ed] the lease

6

agreement." The court explained that "[p]laintiff's failure to follow the procedure to terminate the vacancy within the allotted time triggered the automatic renewal, leading the terms of the [a]greement to govern the use of the storage unit." Concerning the lack of plaintiff's signature on the written agreement, the court found that the notice attached to the lease agreement "clearly and unambiguously stated that the signature was 'for our files,' which can be construed to mean that the signature was for purely administrative purposes."

It is undisputed that plaintiff received the notice of the lease agreement but never signed it. Because plaintiff did not formally reject the agreement or vacate the storage unit, the court held the terms of the agreement became enforceable. However, the lack of a signature did not end the trial court's inquiry. Because plaintiff did not sign the agreement, thereby affirmatively demonstrating his assent to it, the question became whether plaintiff assented to the agreement by his conduct in a manner sufficient to bind him to the arbitration provision in the agreement.

"An arbitration agreement must be the result of the parties' mutual assent . . . ." Skuse v. Pfizer, Inc., 244 N.J. 30, 50 (2020) (quoting Atalese, 219 N.J. at 442). "New Jersey contract law recognizes that in certain circumstances,

conduct can constitute contractual assent." Id. at 50. Moreover, "[o]ur jurisprudence has stressed that when a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver 'must be clearly and unmistakably established.'" Ibid.

Additionally, a "parties' actions, course of conduct, oral expressions, or a combination of the three" may give rise to an "implied-in-fact contract." Comprehensive Neurosurgical, P.C., 257 N.J. at 71. "Contracts implied in fact are no different than express contracts, although they exhibit a different way or form of expressing assent than through statements or writings. Courts often find and enforce implied promises by interpretation of a promisor's word and conduct in light of the surrounding circumstances." Id. at 70 (quoting Wanaque Borough Sewage Auth. v. Twp. of W. Milford, 144 N.J. 564, 574 (1996)). "The modern view is that '[j]ust as assent may be manifested by words or other conduct, sometimes including silence, so intention to make a promise may be manifested in language or by implication from other circumstances.'" Troy v. Rutgers, 168 N.J. 354, 366 (2001) (quoting Restatement (Second) of Conts. § 4 cmt. a (A.L.I. 1981)). Thus, a plenary hearing is often required to resolve such fact-sensitive scenarios to determine whether the parties acted in a manner sufficient to create a contract, whether express or implied. Cf. Troy, 168 N.J. at 366 (holding that

"[w]hether the parties acted in a manner sufficient to create implied contractual terms is a question of fact") (internal citation omitted).

In this case, plaintiff acknowledges receipt of the notice advising him of the deadline to respond, admits he did not respond to the notice, and that he did not remove his belongings from the unit. On the other hand, defendant does not dispute that the parties continued to negotiate terms of the new lease and the balance owed after the written lease was sent out. Moreover, there is no evidence of prior written agreements. In other words, the "restated lease," as defendant refers to it, did not simply renew prior written lease terms. Unlike in Skuse and Leodori, which are cited by both parties, the record is devoid of any additional communications to plaintiff prior to the effective date of the written lease. 244 N.J. at 60-61; 175 N.J. at 306-308. Nor is there evidence that defendant's staff, during conversations with plaintiff before the effective date of the written lease reminded defendant of the approaching deadline.

Given the clear showing of these disputed facts regarding whether plaintiff's conduct constituted a "concrete manifestation" of his assent to the agreement, and particularly to the arbitration provision, the court erred in deciding the motion without first conducting a plenary hearing. Leodori, 175 N.J. at 300 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs.,

PA., 168 N.J. 124, 135 (2001)). A hearing permits the parties to develop an evidentiary record on which the court could properly resolve the disputed issue of the enforceability of the written agreement.

Further, the court erred by not considering the parties' ongoing verbal negotiations and mischaracterized those communications as parol evidence. As a general proposition, "the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document." Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 268 (2006). However, relevant evidence of "the circumstances leading up to the formation of the contract" that will assist the court in determining the parties' intent is admissible. Id. at 269 (internal citation and quotation marks omitted). "In sum, we permit a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties." Id. at 270. As in the present case, the "judicial interpretive function is to consider what was written in the context of the circumstances under which it was written . . . ." Id. at 269. Because the outside communications were relevant to the issue of whether an enforceable agreement was reached, the trial court erred in not considering this extrinsic evidence.

"[W]e have repeatedly emphasized that trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications."

A-3274-24

Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995). Yet, that is what occurred here. Because there were "material factual issues concerning [] plaintiff's mental state, [namely whether he assented to the written agreement], the court should [have held] an evidentiary hearing." Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 612 (App. Div. 2014).

Moreover, "an agreement to arbitrate must be the product of mutual assent, as determined under customary principles of contract law." NAACP of Camden Cnty. E., 421 N.J. Super. at 424-25. "For there to be a meeting of the minds, parties to an arbitration contract must clearly and unambiguously understand the 'distinction between resolving a dispute in arbitration and in a judicial forum.'" Fazio, 261 N.J. at 103 (quoting NAACP of Camden Cnty. E., 421 N.J. Super. at 445). All the more reason for the court to have held a plenary hearing.

Accordingly, we vacate the May 9, 2025 order and remand the case for proceedings consistent with this opinion. Those proceedings must include an evidentiary hearing on whether the contract and arbitration provision are enforceable and may include before the hearing any discovery the court within its discretion deems appropriate to address the issues before it. We take no position on the ultimate decision.

11

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3274-24