NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1779-15T4

NANCY L. THOMPSON,

 Plaintiff-Respondent,

v.

JOHN P. THOMPSON,

 Defendant-Appellant.
_______________________________

 Submitted May 15, 2017 – Decided June 1, 2017

 Before Judges Haas and Currier.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Morris County,
 Docket No. FM-14-450-12.

 Lombardo Law Offices, LLC, attorneys for
 appellant (Bart W. Lombardo, on the briefs).

 Celli & Schlossberg, LLC, attorneys for
 respondent (Vincent P. Celli, on the brief).

PER CURIAM

 In this post-judgment matrimonial matter, defendant appeals

from paragraph eleven of the September 29, 2015 order of the Family

Part, granting plaintiff's motion to require defendant to pay her

"one ha[lf] of the proceeds of the liquidation of . . .
[d]efendant's annuity with Local 197." Defendant also appeals

from the trial court's November 30, 2015 order denying his motion

for reconsideration and ordering him to pay plaintiff $1050 in

attorney's fees and costs. We are constrained to reverse and

remand because the trial court did not conduct a plenary hearing

to resolve the parties' sharply conflicting factual assertions

regarding the equitable distribution of defendant's annuity.

 The parties were married in May 1987 and divorced in June

2013. However, they did not finalize their property settlement

agreement ("PSA") until January 16, 2014.

 Paragraph 3.6 of the PSA stated that the parties were to

"equally split their retirement assets[,]" including defendant's

"two Union pensions, Local 197 and Local 11," and defendant's

annuity. Although not specified in the PSA, the parties agree

that the annuity referred to in paragraph 3.6 was one that

defendant held through Local 197 at some point during the parties'

marriage.

 In July 2014, defendant filed a motion seeking to enforce

various provisions of the PSA. Among other things, defendant

alleged that plaintiff had failed to turn over a number of his

personal items to him, including tools, a patio set, and a toy

truck collection. Defendant also sought an order requiring an

 2 A-1779-15T4
escrow agent to distribute the proceeds from the sale of the

marital home to the parties.

 In response, plaintiff filed a cross-motion responding to

defendant's contentions, and seeking relief of her own concerning

the enforcement of the PSA. With reference to the present appeal,

plaintiff asked that the trial court award her a $26,277 credit

from defendant's share of the proceeds of the sale of the marital

home representing what she believed was her 50% share of

defendant's Local 197 annuity that had not yet been paid to her.

 In her accompanying certification, plaintiff alleged that in

May 2014, she learned for the first time that defendant had cashed

out the Local 197 annuity in May 2010, over three years before the

parties divorced. Plaintiff asserted that there was $52,805.81

in the annuity when defendant withdrew these funds.1 She also

argued that her signature on a form defendant submitted to obtain

the money had been forged.

 In his reply certification, defendant stated that plaintiff

was aware of the withdrawal of the annuity funds during the

marriage and knew they were used to pay marital bills. He also

1
 According to plaintiff, defendant paid $10,561.16 in taxes on
the money in the annuity fund and a $250 administration fee. Thus,
she asserted that defendant received $41,994.65 in net proceeds.

 3 A-1779-15T4
asserted that plaintiff had "emptied [$50,000 from] a joint bank

account" during the marriage, and "put it into her own name[.]"

 On October 30, 2014, the parties agreed to the entry of a

consent order. The consent order listed several different payments

and credits that each party was to pay the other from the share

of the sale proceeds from the marital home and other sources. The

order also required plaintiff to give defendant a chainsaw, two

leaf blowers, a bench grinder, and his aunt's green patio set.

 The consent order does not specifically mention plaintiff's

claim for a $26,277 credit from defendant's share of the escrow

funds as her share of the Local 197 annuity, or defendant's

allegation that plaintiff had improperly taken $50,000 of joint

marital funds prior to the parties' divorce. However, paragraph

nine of the consent order contained a catch-all provision that

specifically stated:

 Both parties hereby agree that neither
 has a claim against the other for any
 personalty and further agree that any
 financial credits outstanding due one to the
 other have been resolved to their satisfaction
 as set forth herein.

 Eight months later, defendant filed a motion on June 22,

2015, seeking to reduce his alimony and child support obligations.

In response, plaintiff filed a cross-motion. In the cross-motion,

plaintiff asked for an order "[c]ompelling [d]efendant to pay over

 4 A-1779-15T4
to [p]laintiff one-half of the proceeds of liquidation of

defendant's annuity with Local 197." In her certification in

support of her motion, plaintiff again asserted that defendant had

cashed out the annuity in May 2010 while the parties were still

married and that she had not been paid her share.

 Plaintiff did not mention the parties' October 30, 2014

consent order in her certification. However, in defendant's reply

certification, he asserted that this marital asset was disposed

of by paragraph nine of the consent order. He also explained that

plaintiff agreed to give up her claim to a share of the Local 197

annuity in return for his agreement not to pursue his claim that

"she absconded with tens of thousands of dollars in marital funds

immediately before she filed for divorce." Defendant also stated

that the parties' "attorneys recommended that those claims be

offset against one another and closed. Which they were."

 Following oral argument, the trial judge entered an order on

September 29, 2015 that, in paragraph eleven, required defendant

to pay plaintiff "one ha[lf] of the proceeds of the liquidation

of . . . [d]efendant's annuity with Local 197." In briefly

explaining this ruling in his written statement of reasons, the

judge merely noted that plaintiff's request for relief was "within

the provisions of the parties' PSA[.]" The judge did not refer

to the parties' October 30, 2014 consent order or defendant's

 5 A-1779-15T4
contention that the parties amicably resolved the issue concerning

the annuity at that time.

 On October 20, 2015, defendant filed a motion for

reconsideration. Once again, defendant asserted that plaintiff's

claim for a share of the Local 197 annuity was embodied in the

catch-all provision of paragraph nine of the October 30, 2014

consent order, together with his own demand for the return of

marital funds from plaintiff. Defendant also pointed out that if

plaintiff truly believed that her request for a share of the

annuity had not been addressed in the consent order, she would

have immediately brought it to the court's attention at that time.

Instead, defendant noted that plaintiff did not raise the issue

until she filed her cross-motion many months later.

 In her responsive certification, plaintiff alleged that

defendant was more concerned at the time of the October 30, 2014

consent order with getting his personal property back and,

therefore, her claim for a share of the annuity "kept being pushed

aside to discuss the other issues in the motion and we never went

back to resolve the annuity issue." Thus, plaintiff argued that

the annuity "issue was never addressed or resolved" in the consent

order.

 In his reply certification, defendant stated that it was

"simply not plausible to believe that . . . plaintiff . . . would

 6 A-1779-15T4
have let the issue sit for over one full year before raising it

again. The matter [of the Local 197 annuity] was resolved by way

of a consent order." Defendant also contended that the amounts

each party sought concerning the annuity and the marital bank

accounts "were very close and we simply credited them against one

another as set forth in paragraph 9 of the consent order."

 At oral argument, defendant's attorney reiterated defendant's

position that the parties' attorneys resolved the distribution of

the annuity, and the issues concerning the money plaintiff

allegedly took during the marriage, in the October 30, 2014 consent

order. However, the trial judge did not conduct a plenary hearing

to take testimony from the parties or their respective attorneys

to determine the credibility of either parties' claims or the

intent underlying the catch-all provision of the consent order.

 Instead, the trial judge issued an order on November 30,

2015, denying defendant's motion for reconsideration and again

ordering him to pay plaintiff one-half of the proceeds of the

liquidation of the Local 197 annuity.2 In his accompanying

statement of reasons, the judge failed to explain why he did not

hold a plenary hearing concerning the parties' widely divergent

factual contentions. Instead, the judge stated that he did "not

2
 The order did not specify the amount defendant was to pay
plaintiff.

 7 A-1779-15T4
find it plausible that an item worth $41,994.55 would have been

left to what . . . [d]efendant argues is a sort of catch-all

paragraph in a consent order. Such an argument is even less

tenable when one considers that the parties referred to several

other valuable items specifically." The judge also ordered

defendant to pay plaintiff $1050 in attorney's fees and costs.

This appeal followed.

 On appeal, defendant argues that the trial judge erred by

granting plaintiff's request for half of the Local 197 annuity.

For the reasons that follow, we reverse and remand for a plenary

hearing.

 We normally owe substantial deference to the Family Part's

findings of fact because of that court's special expertise in

family matters. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998).

Thus, "[a] reviewing court should uphold the factual findings

undergirding the trial court's decision if they are supported by

adequate, substantial and credible evidence on the record."

MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (alteration

in original) (quoting N.J. Div. of Youth & Family Servs. v. M.M.,

189 N.J. 261, 279 (2007)). However, we owe no special deference

to the judge's legal conclusions. Manalapan Realty, L.P. v. Twp.

Comm. of Manalapan, 140 N.J. 366, 378 (1995). Interpretation and

construction of a contract, such as the consent order in this

 8 A-1779-15T4
case, is a matter of law for the trial court, subject to de novo

review on appeal. Fastenberg v. Prudential Ins. Co. of Am., 309

N.J. Super. 415, 420 (App. Div. 1998); Kaur v. Assured Lending

Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (reviewing the

enforcement of a settlement agreement de novo).

 Further, we review the denial of a motion for reconsideration

to determine whether the trial court abused its discretion.

Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).

Reconsideration should be granted in "those cases which fall into

that narrow corridor in which either 1) the [c]ourt has expressed

its decision based upon a palpably incorrect or irrational basis,

or 2) it is obvious that the [c]ourt either did not consider, or

failed to appreciate the significance of probative, competent

evidence." Id. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super.

392, 401-02 (Ch. Div. 1990)).

 After reviewing the record in light of these principles, we

are constrained to reverse and remand the trial judge's decision

ordering defendant to pay plaintiff half of the Local 197 annuity

because the judge did not conduct a plenary hearing concerning the

proper interpretation of the October 30, 2014 consent order.

 When determining the meaning of a matrimonial agreement, such

as a consent order, courts apply the "basic rule of contractual

interpretation that a court must discern and implement the common

 9 A-1779-15T4
intention of the parties." Pacifico v. Pacifico, 190 N.J. 258,

266 (2007). Courts usually enforce contracts as written. Kampf

v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960).

 However, when a contract is ambiguous in a material respect,

the parties must be given the opportunity to illuminate the

contract's meaning through the submission of extrinsic evidence.

Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 268-70 (2006).

A contract is ambiguous if its terms are "susceptible to at least

two reasonable alternative interpretations." Nester v. O'Donnell,

301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v.

Provident Life & Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J.

1992), aff'd, 993 F.2d 877 (3d Cir. 1993)).

 In attempting to resolve ambiguities in a document, courts

may consider extrinsic evidence. While such evidence should never

be permitted to modify or curtail the terms of an agreement, a

court may "consider all of the relevant evidence that will assist

in determining the intent and meaning of the contract." Conway,

supra, 187 N.J. at 269. As the Court explained in Conway,

 [e]vidence of the circumstances is always
 admissible in aid of the interpretation of an
 integrated agreement. This is so even when
 the contract on its face is free from
 ambiguity. The polestar of construction is
 the intention of the parties to the contract
 as revealed by the language used, taken as an
 entirety; and, in the quest for the intention,
 the situation of the parties, the attendant

 10 A-1779-15T4
 circumstances, and the objects they were
 thereby striving to attain are necessarily to
 be regarded. The admission of evidence of
 extrinsic facts is not for the purpose of
 changing the writing, but to secure light by
 which to measure its actual significance.

 [Ibid. (quoting Atl. N. Airlines, Inc. v.
 Schwimmer, 12 N.J. 293, 301-02 (1953)).]

 Here, the parties disputed the meaning of the catch-all

provision of paragraph nine of the October 30, 2014 consent order.

The key provision in this paragraph is the parties' statement that

they "agree that any financial credits outstanding due one to the

other have been resolved to their satisfaction as set forth

herein."

 On the one hand, defendant certified that he and his attorney

negotiated with plaintiff and her attorney concerning their

respective claims that each party took marital funds during the

marriage. Defendant further certified that at the conclusion of

these negotiations, the parties specifically agreed that plaintiff

would give up her claim for a share of the Local 197 annuity if

he relinquished any claim to a share of the marital funds plaintiff

allegedly took for herself during the marriage.

 On the other hand, plaintiff certified that the issue of the

annuity kept getting pushed aside as the parties battled over

other items, such as tools and lawn furniture. She noted that the

 11 A-1779-15T4
annuity was not specifically mentioned in the consent order and,

therefore, alleged that it was not addressed in that document.

 Rather than conducting a plenary hearing to resolve the

parties' competing factual assertions concerning their intent in

including paragraph nine in the consent order, the trial judge

simply stated that he believed it was implausible that the parties

would have included a large amount of money like the annuity in a

catch-all provision, rather than in a separate paragraph

specifically referring to it. On this record, however, defendant's

competing contention that if the annuity had really not been

addressed in the consent order, plaintiff surely would have

immediately brought it to the court's attention, was equally

plausible. In addition, there was a clear factual dispute between

the parties as to whether plaintiff signed the document permitting

defendant to remove funds from the Local 197 annuity in the

presence of a notary or whether, as plaintiff alleged, her

signature on that document was a forgery.

 Under these circumstances, the trial judge should have

conducted a plenary hearing. "[I]n a variety of contexts, courts

have opined on the impermissibility of deciding contested issues

of fact on the basis of conflicting affidavits and certifications

alone." State v. Pyatt, 316 N.J. Super. 46, 50 (App. Div. 1998)

(citations omitted), certif. denied, 158 N.J. 72 (1999). In

 12 A-1779-15T4
particular, where the parties' pleadings raise issues of fact or

require credibility determinations, relief cannot be denied absent

a plenary hearing. Whitfield v. Whitfield, 315 N.J. Super. 1, 12

(App. Div. 1998). Here, the parties filed conflicting

certifications concerning the intent of paragraph nine of the

October 30, 2014 consent order, which required a plenary hearing

to resolve.

 Therefore, we reverse the portions of the September 29, 2015

and November 30, 2015 orders that required defendant to pay

plaintiff half of his Local 197 annuity, and remand for a plenary

hearing as set forth in this opinion. In light of this

determination, we also reverse the portion of the November 30,

2015 order requiring defendant to pay plaintiff $1050 in attorney's

fees and costs, without prejudice to the ability of either party

to seek such fees as part of the remand. The remand proceedings

should be completed within 120 days.

 Reversed and remanded for a plenary hearing. We do not retain

jurisdiction.

 13 A-1779-15T4