**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5390-16T1

K.D.E.,

     Plaintiff-Respondent,

v.

J.E.,

     Defendant-Appellant.

_____

> Argued October 1, 2018 – Decided October 12, 2018
>
> Before Judges Sabatino and Haas.
>
> On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0185-08.
>
> Noel S. Tonneman argued the cause for appellant (Tonneman & Connors, LLC, attorneys; Noel S. Tonneman, of counsel and on the brief).
>
> August J. Landi argued the cause for respondent.

PER CURIAM

In this post-judgment matrimonial matter, defendant J.E.[1] appeals from the Family Part's June 16, 2017 order which, among things: (1) granted plaintiff K.D.E.'s motion to be "reimbursed the sum of $36,254.61 from [d]efendant's share of [the] proceeds of the sale of the former marital home for the principal reduction of the mortgage" (paragraph ten of the order); (2) required defendant to pay 15% of the parties' "out-of-pocket costs incurred" for the college expenses of their youngest child (paragraphs eleven and twelve of the order); and (3) directed defendant to reimburse plaintiff for half of the money the parties paid to a mediator and a guardian ad litem (GAL) retained by them during their divorce proceedings (paragraphs four and five of the order). We are constrained to reverse and remand these portions of the June 16, 2017 order because the trial judge did not conduct a plenary hearing to resolve the parties' sharply conflicting factual contentions on these matters, and failed to make adequate findings of fact and conclusions of law in connection with these rulings.

The parties were married in May 1988 and divorced in June 2009. They have two children. During the divorce proceedings, the court appointed a GAL for defendant, and she was also represented by an attorney. The parties

---

[1] We use initials to refer to the parties in order to protect the family's privacy.

incorporated their Matrimonial Settlement Agreement (MSA) into their Dual Judgment of Divorce.

At the time of their divorce, the parties still owned and lived in their home. Plaintiff earned $137,500 per year, while defendant's only income came from Social Security Disability (SSD) benefits of $793 per month. Plaintiff agreed to pay $700 per week in alimony to defendant after she vacated the marital home. Although the parties shared joint legal custody of their children, they were to live with plaintiff after defendant moved out or the home was sold. Because defendant was receiving SSD, the MSA did not require her to pay child support to plaintiff. However, plaintiff received and controlled the children's own Social Security benefits.

Paragraph 4.3 of the MSA stated that plaintiff and the children had "the right to occupy the marital residence until it is sold[,]" although defendant could also "remain in the home until alternate housing approved by her [GAL] is obtained for her[,] . . . provided that a court-appointed [GAL] is still in place[.]" With particular relevance to the current appeal, Paragraph 4.3 went on to state:

> For so long as [plaintiff] and [defendant] continue to occupy the residence, they shall continue to pay the household expenses as they have since [defendant] commenced receiving [SSD] benefits. Thereafter, [plaintiff] shall be solely responsible for all costs incident to maintaining the home until sold.

3

Regarding the sale of the home, Paragraph 4.1 of the MSA provided:

> The home shall be listed for sale with [a specific real estate agent] at a listing price of $530,000[]. Both parties shall fully cooperate with the listing of the home and take all necessary steps to effectuate a timely sale of the residence. Upon the sale of the home, the net proceeds realized shall be equally divided between the parties after the payment of the following:
>
> a.  Outstanding mortgage and home equity loan.
>
> b.  All usual and customary selling expenses.
>
> c.  The cost of all repairs required to obtain a continuing Certificate of Occupancy or to effectuate the closing of title.
>
> d.  The balance outstanding on the United Teletech credit card of approximately $18,000[].
>
> e.  All outstanding fees owed to the attorneys for the parties in connection with the pending matrimonial litigation, the mediator's fees and the fees for [defendant's GAL].
>
> f.  The cost of the preparation of any Domestic Relations Orders required by the provisions of this agreement.

Paragraph 2.4 of the MSA stated that the parties "shall each contribute toward their children's post-secondary school education costs and expenses[.]" However, this paragraph also provided that

> [i]n the event [defendant] is still disabled at the time the children enter college or other post-secondary

4

education program and [plaintiff] continues to earn an income comparable or greater than his current annual salary of $137,500, [defendant's] contribution toward the children's educational expenses shall not exceed 15% of the out-of-pocket costs incurred.

Finally, Paragraph 8.12 of the MSA provided that

[a] modification or waiver of any of the provisions of [the MSA] shall be effective when and only if made in writing and executed with the same formality as [the MSA]. The failure of either party to insist upon strict performance of any of the provisions of [the MSA] shall not be construed as a waiver of any subsequent default of the same or similar nature.

About a month after the parties executed their MSA, defendant moved to Arizona. Upon her arrival, defendant threatened to commit suicide and she was hospitalized for a period of time. Following her release, she moved into an assisted living facility, and paid $2300 per month to live there.

Plaintiff and the children remained in the former marital home. Plaintiff arranged for the listing of the home with the real estate agent, but he asserted that "[d]efendant refused to sell the house" and "maintain[ed] that she wanted to wait until the real estate market improved so that [the parties] could get a higher price for the home." Plaintiff knew that he could file an enforcement motion to compel the sale of the home, but he failed to do so because he "was not eager to spend more time and money in court."

Thereafter, plaintiff and the children lived in the home until 2015. During this period, plaintiff continued to pay the mortgage and the other carrying costs as required by Paragraph 4.3 of the MSA. Plaintiff claimed that he "talk[ed] to defendant often about selling the house over the years but she steadfastly refused. [He] did not have the realtor send a listing agreement knowing she would not sign." Defendant disputed that these contacts occurred, and asserted that she may not have been competent when plaintiff attempted to list the home in 2009 and, therefore, plaintiff should have gone to court to have a GAL appointed for her who could review and sign the listing agreement.

Sometime in 2015, the parties agreed to list the home for sale, and it was sold for $470,000 on November 30, 2015. However, the parties were unable to agree on the distribution of the sale proceeds as required by Paragraph 4.1 of the MSA, and plaintiff filed a motion seeking to compel certain payments to him from these funds. We now turn to the parties' specific contentions that are at issue in this appeal.

First, plaintiff asserted that the parties' outstanding mortgage balance was $115,305.79 at the time they signed the MSA. After living in the house until 2015 and paying the mortgage for over six years, the mortgage had been reduced by $72,509.23 to $42,796.56. In his certification in support of his motion,

plaintiff argued that he "should receive a credit for the reduction of the mortgage balance post-divorce" in the amount of $36,254.61, which was half of the amount by which the mortgage was reduced following the payments he made while he lived there.

As noted above, Paragraph 4.3 of the MSA required plaintiff to continue to pay the mortgage until the home was sold. There is no provision in this or any other provision of the MSA that states that plaintiff is to receive a credit for having reduced the mortgage balance while staying in the home. Nevertheless, plaintiff asserted that the parties both believed the house would be sold in "a matter of months" once defendant moved out, and neither "expected that the former marital home would not be sold for six years" because of defendant's failure to cooperate with the sale. Based on these allegations, plaintiff asked the court to give him a credit for paying down the mortgage.

Defendant disagreed, and argued that plaintiff paid less by staying in the home than he would have paid had he left the home and bought or rented a new one. He also received tax benefits from paying the mortgage, which he did not share with her. Defendant also continued to argue that plaintiff could have, but did not, file an enforcement motion at any time between 2009 and 2015 to sell the home.

A-5390-16T1

Plaintiff also sought an order compelling defendant to contribute to the college costs of the parties' youngest child, who had entered a five-year college program in 2013. Plaintiff alleged that he had paid over $56,000 of the child's expenses, and argued that based on the alimony and SSD benefits defendant was receiving, she should be obligated to pay 15% of these and future college costs. In response, defendant questioned whether plaintiff had actually paid these expenses. More pertinently, she alleged that her "bare-bones budget exceed[ed] [her] income" and, therefore, she could not pay any portion of the child's college expenses.

Finally, plaintiff asked that the court order defendant to pay half of all of the monies owed to both the GAL and the mediator who assisted the parties during the divorce proceedings. He stated that the GAL had charged $7306.80, while the mediator's billings totaled $2767.50, and he sought a credit for allegedly paying these bills.

Defendant disputed plaintiff's asserted right to this payment. Pointing to the exhibits attached to plaintiff's motion, defendant alleged that as of the date of the parties' divorce, all of the mediator's bills had been paid. In addition, while the GAL's total bill had been over $7000, she maintained that the unpaid balance when the parties divorced was just $3108.38.

A-5390-16T1

Contradicting plaintiff's claim that he had paid these amounts prior to the divorce, defendant asserted that both parties were contributing to all of their expenses while their divorce was pending. Pointing to Paragraph 4.1(e) of the MSA, defendant argued that the parties had agreed to pay only the mediator and GAL bills that were "outstanding" at the time the MSA was executed. Therefore, defendant stated that plaintiff was not entitled to any credit for the mediator's bill because it had already been paid in full by the time the MSA was executed. Defendant also argued that the parties should simply split the responsibility for the $3108.38 for the amount still due the GAL, with each of them contributing $1554.19 from their share of the sale proceeds.

The judge did not conduct a plenary hearing to address the disputes of fact raised by the parties in their competing certifications. Instead, she decided the motion in plaintiff's favor based only on their divergent pleadings.

In a short statement of reasons attached to the order, the judge found that plaintiff did not "push the issue of the sale of the home until 2015" because defendant had "made multiple suicide attempts since the time of the divorce[.]" However, plaintiff claimed in his certification that he did not seek to enforce the order to sell the home because he "was not eager to spend more time and money in court[,]" not because of defendant's hospitalization.

The judge noted that the MSA did not provide for plaintiff to receive a credit against defendant's share of the sale proceeds for any reduction in the mortgage balance caused by him paying the mortgage while living in the home. Nevertheless, the judge opined that the parties "did not anticipate the lengthy delay from the time of the divorce to the time of sale that allowed [plaintiff] this opportunity to pay down the mortgage principal." The judge found that defendant's failure to sign the listing agreement in 2009 was the sole cause for the delay, without mentioning that plaintiff failed to do anything to enforce the agreement for over six years. The judge also did not address defendant's argument that plaintiff received the financial benefit of tax deductions by paying the mortgage, and was able to live less expensively by staying in the marital home instead of buying or renting a new house.

The judge concluded that if defendant had signed the listing agreement in 2009, plaintiff "would have had the ability to purchase a new home and gain equity. [Defendant's] noncompliance prevented [plaintiff] from receiving the equity and benefits that would come from owning his own home." Therefore, the judge found that plaintiff's request "for a credit must be granted in order to prevent the unjust enrichment of" defendant.

The judge also ordered defendant to pay 15% of the parties' child's college expenses. However, she made no findings in her decision explaining this determination.

Finally, the judge awarded plaintiff a credit against defendant's share of the house sale proceeds of $1387.75, which was half of the $2767.50 the parties paid to the mediator prior to their divorce. The judge also ordered defendant to pay plaintiff $3653.40, which was half of the total $7306.80 billed by defendant's GAL. The judge did not make any findings of fact or conclusions of law in her statement of reasons concerning this ruling. In addition, she did not address defendant's argument that the parties agreed in the MSA that only the amounts still "outstanding" at the time of the divorce for these bills would be paid out of the sale proceeds. This appeal followed.

On appeal, defendant argues that the judge erred by giving plaintiff a credit for reducing the mortgage balance because nothing in the MSA provided for such a credit, and there were disputes of fact between the parties as to this issue. She also contends the judge made no findings of fact or conclusions concerning her determinations on college expenses, and the payment of the

mediator and GAL bills.[2]  For the reasons that follow, we reverse and remand for a plenary hearing.

We normally owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters.  Cesare v. Cesare, 154 N.J. 394, 411-12 (1998).  Thus, "[a] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record."  MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

---

[2] On appeal, defendant asserts that there was also a dispute between the parties over a home equity line of credit (HELOC) that plaintiff tapped to pay off a credit card.  However, she did not raise this issue concerning the HELOC before the trial court.  Instead, she stated in her response to plaintiff's motion that: (1) the HELOC had a balance of $122,918.24 at the time of the divorce; (2) this balance had risen to $126,730.28 by the time the house was sold; and (3) this amount was paid to close out the HELOC at the closing.  She asked that the court order plaintiff to account for the $3812.04 difference between the beginning and ending HELOC balances by giving her a credit of $1906.03 against plaintiff's share of the sale proceeds.  Plaintiff agreed to do so.  Noting the parties' agreement, the judge included this requirement in paragraph two of the June 16, 2017 order.  Because defendant failed to raise any issue concerning the HELOC before the trial court, we decline to consider her argument raised in Point One of her brief that plaintiff should have been responsible for paying additional amounts to settle the HELOC account.  Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (noting that we ordinarily decline to consider an issue not properly raised before the trial court, unless the jurisdiction of the court is implicated or the issue concerns a matter of great public importance).

However, we owe no special deference to the judge's legal conclusions. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 40 N.J. 366, 378 (1995). Interpretation and construction of a contract, such as the MSA in this case, is a question of law for the trial court, subject to de novo review on appeal. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (reviewing the enforcement of a settlement agreement de novo).

We also note that Rule 1:7-4(a) clearly states that a trial "court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right[.]" See Shulas v. Estabrook, 385 N.J. Super. 91, 96 (App. Div. 2006) (requiring an adequate explanation of basis for court's action). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). The failure to provide findings of fact and conclusions of law "constitutes a disservice to the litigants, the attorney[s], and the appellate court." Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (quoting Kenwood Assocs. v. Bd. of Adj. Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)).

After reviewing the record in light of these principles, we reverse and remand the trial judge's decision because the judge did not conduct a plenary hearing concerning the proper interpretation of the MSA, and failed to make any meaningful findings of fact and conclusions of law on the three issues presented in this appeal.

We begin with the judge's decision granting a credit to plaintiff against defendant's share of the sale proceeds for half of the amount by which the mortgage balance was reduced during the six years plaintiff lived there after the divorce. When determining the meaning of a matrimonial agreement, such as parties' MSA, courts apply the "basic rule of contractual interpretation that a court must discern and implement the common intention of the parties." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007). Courts usually enforce contracts as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960).

However, when a contract is ambiguous in a material respect, the parties must be given the opportunity to illuminate the contract's meaning through the submission of extrinsic evidence. Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 268-70 (2006). A contract is ambiguous if its terms are "susceptible to at least two reasonable alternative interpretations." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life &

Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992), aff'd, 993 F.2d 877 (3d. Cir. 1993)).

In attempting to resolve ambiguities in a document, courts may consider extrinsic evidence. While such evidence should never be permitted to modify or curtail the terms of an agreement, a court may "consider all of the relevant evidence that will assist in determining the intent and meaning of the contract." Conway, 187 N.J. at 269. As the Court explained in Conway,

> [e]vidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity. The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance.
>
> [Ibid. (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301-02 (1953)).]

Here, the MSA did not specifically address whether plaintiff would be entitled to a credit if he stayed in the home and paid down the mortgage. On the one hand, defendant argued that this was an intentional decision by the parties, and the absence of a specific provision in the MSA meant that plaintiff was not

15

entitled to the requested credit. In response, plaintiff alleged that the parties never intended that the house would remain unsold for over six years and, in light of this understanding, felt there was no need to include a specific provision authorizing the mortgage credit.

Defendant also argued that plaintiff reaped the financial benefits of living in the home and getting tax deductions for paying the mortgage, which the judge did not consider in her decision. Plaintiff asserted that the judge should not hold him responsible for failing to file a motion to enforce the MSA in 2009, even though Paragraph 4.1 required both parties to "take all necessary steps to effectuate a timely sale of the residence."

On the basis of these conflicting factual and legal allegations, the judge observed that the provision in the MSA "related to the mortgage payments is ambiguous, if not completely absent." Under these circumstances, the judge should have conducted a plenary hearing. "[I]n a variety of contexts, courts have opined on the impermissibility of deciding contested issues of fact on the basis of conflicting affidavits or certifications alone." State v. Pyatt, 316 N.J. Super. 46, 50 (App. Div. 1998). In particular, where the parties' pleadings raise issues of fact or require credibility determinations, relief cannot be denied absent a plenary hearing. Whitfield v. Whitfield, 315 N.J. Super. 1, 12 (App.

16

Div. 1998). Here, the parties filed conflicting certifications concerning their intent, and the appropriate interpretation of the MSA as it related to plaintiff's payment of the mortgage, which required a plenary hearing to resolve. Therefore, we reverse paragraph ten of the June 16, 2017 order, and remand for a plenary hearing.

Turning to defendant's remaining contentions, the judge did not make any findings of fact or conclusions of law to support her decision to require defendant to pay 15% of the costs of the parties' child's college expenses. As set forth in Paragraph 2.4 of the MSA, that was the maximum amount of any contribution from defendant. However, defendant argued she was unable to pay anything toward the college costs. The parties each submitted Case Information Statements with their motion papers, but the judge did not address them in her decision. The judge's failure to make the required findings in connection with paragraphs eleven and twelve of the June 16, 2017 order requires a remand for fulfillment of the court's obligation in this regard. In view of the factual disputes involved in the parties' respective positions on defendant's ability to pay, this issue should also be addressed at the plenary hearing.

Finally, we must also reverse the judge's ruling in paragraphs four and five of the June 16, 2017 order, and remand the issues concerning the payments

made to the mediator and defendant's GAL for a plenary hearing. As was the case with the college expenses, the judge did not make findings of fact or conclusions of law concerning her decision to grant plaintiff credits for these expenses.

In addition, the judge did not address the contract interpretation issue posed by the ambiguous language the parties used in Paragraph 4.1(e) concerning the payment of these fees. As stated above, this provision required the parties to pay "[a]ll outstanding fees owed to the attorneys for the parties in connection with the pending matrimonial litigation, the mediator's fees and the fees for" defendant's GAL. (emphasis added).

Although defendant reads this provision to mean that the required payment was limited to the "outstanding" mediator's fees and GAL fees at the time of the parties' divorce, only the attorney's fees mentioned in the paragraph are modified by that adjective. Thus, it is entirely possible that the parties intended that all of the mediator's and GAL's fees were to be paid from the sale proceeds. However, this interpretation does not take into account defendant's claim that the mediator had already been fully paid at the time of the divorce and partial payments had been given to the GAL, and these payments were not

made solely by plaintiff. These factual issues can only be addressed at a plenary hearing.

In sum, we reverse and remand the court's determinations that are the subject of this appeal, and remand for a plenary hearing on these issues. The court shall conduct a case management conference within thirty days to plan the logistics of the plenary hearing and the possible exchange of any appropriate discovery.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION