**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1240-19

JENNIFER MARIANA,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

HENRY MARIANA,

       Defendant-Appellant/
       Cross-Respondent.

_____

Argued February 23, 2021 – Decided March 29, 2021

Before Judges Yannotti, Mawla and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0573-18.

Jennifer R. Haythorn argued the cause for appellant/cross-respondent (Pellettieri, Rabstein & Altman, attorneys; John A. Hartmann, III, of counsel and on the briefs; E. Elizabeth Sweetser, on the briefs).

Bonnie C. Frost argued the cause for respondent/cross-appellant (Einhorn, Barbarito, Frost

& Botwinick, PC, attorneys; Bonnie C. Frost, Matheu
D. Nunn, and Jillian P. Freda, on the briefs).

PER CURIAM

In this post-judgment matrimonial action, defendant Henry Mariana appeals from a September 4, 2019 order: 1) denying his motion to compel plaintiff Jennifer Mariana to pay certain tax liabilities related to the parties' investment accounts and his request for attorneys' fees, and 2) granting plaintiff's fee application. Defendant also appeals from the court's November 9, 2019 order denying his motion for reconsideration. Plaintiff cross-appeals from that portion of the November 9, 2019 order which denied her application for additional counsel fees associated with opposing defendant's motion for reconsideration.

For the reasons that follow, we vacate the September 4, 2019 order and the November 9, 2019 order, in part, and remand for a plenary hearing concerning the proper interpretation of the parties' marital settlement agreement (MSA). Specifically, we conclude additional development of the record is necessary with respect to the parties' intent regarding their respective responsibility for state and federal taxes associated with certain investment accounts. We reject, however, plaintiff's cross-appeal and affirm the court's decision denying her request for attorneys' fees.

2

I.

On December 11, 2018, the court issued a final judgment of divorce which terminated the parties' nearly twenty-year marriage and incorporated the terms of the MSA. The MSA, which the parties characterized as "fair, just, adequate[,] and reasonable," awarded plaintiff $255,000 in lump sum alimony and also addressed issues related to medical and life insurance, and the equitable distribution of the marital property and retirement accounts.

The parties acknowledged that the MSA was a final, negotiated, and integrated agreement and its purpose was to resolve completely "all questions regarding support and equitable distribution of the assets of the marriage . . . ." Consistent with that goal, the MSA contained broad and mutual general releases.

Paragraph 14 addressed the division of five of the parties' investment accounts, two of which—account numbers 3772 and 4052—are the subject of this appeal. Paragraph 14 provided:

> The assets in the above-listed investments accounts shall be equally divided "in kind" between the parties to equalize the potential taxes and/or losses to each party. The parties shall work with their brokers and/or a mutually acceptable accountant to divide these investment accounts "in kind" within ten . . . days of the date of this [a]greement. The cost of the broker or

mutually acceptable accountant, if any, shall be equally shared by the parties.

In paragraph 25 both parties represented that: 1) there are no outstanding debts in their joint names; 2) they have not incurred any debts or obligations for which the other may be liable; and 3) if "either party has incurred such debts or obligations, they shall be solely responsible for them and, in the event that the other party is called upon to make any payment or contribution towards the same, they shall indemnify and hold said party harmless . . . ."

Finally, the parties agreed to file separate 2018 state and federal income tax returns and acknowledged in paragraph 38 that there may be tax consequences associated with the equitable distribution of the marital property. They also acknowledged they could "obtain independent tax advice from qualified tax accountants or tax counsel" prior to executing the MSA.

Approximately eight months before signing the MSA, defendant exercised, with plaintiff's knowledge and consent, certain stock options obtained from his prior employment. Believing that all required taxes were withheld, defendant deposited the net proceeds in account number 4052 and purchased mutual funds. The parties thereafter liquidated those investments

A-1240-19

and distributed the funds in account number 4052, along with the remaining accounts listed in paragraph 14, in accordance with the MSA.

After defendant filed his 2018 state and federal tax returns, he was advised that he was responsible for additional taxes because his investment advisor under-withheld taxes related to his exercise of the options. Further, account numbers 4052 and 3772 had untaxed dividends and capital gains. As a result, defendant requested plaintiff pay him fifty percent of the assessed tax liability.

Plaintiff refused defendant's request and he accordingly filed an application to compel plaintiff to pay her share of the tax liability or to permit him to make an appropriate reduction in his remaining payment obligations under the MSA. In support of his motion, defendant certified that "[p]laintiff and [he] were both unaware that additional taxes and fees would be owed" on exercising the stock options at the time of the division of the accounts in paragraph 14. He specifically requested plaintiff pay him $143,909.39, which allegedly represented her share of the tax liability related to the exercise of the stock options and the 2018 dividends and capital gains on account numbers 4052 and 3772.

A-1240-19

Plaintiff opposed defendant's application and cross-moved to enforce the terms of the parties' MSA. In support, plaintiff certified that she did not understand paragraph 14 to "require[ her] to share in the[] . . . taxes that [defendant] incurred." She also certified that "[a]t no time when [she and defendant] were negotiating [the MSA], did [d]efendant advise [her] or [her] attorney that there would be additional taxes owed as a result of exercising the . . . stock options."

Plaintiff stated if she had known about "such a potential tax problem . . . , it would have impacted [her] willingness to make other concessions" such as her waiver of her right to challenge defendant's alleged improper transfer of marital assets and her acceptance of a limited lump sum alimony award as opposed to an open durational award. Finally, plaintiff requested $5,562.50 in attorneys' fees and costs with regard to her cross-motion, which she supported with a certification of services.

After considering the parties' submissions and oral arguments, the court issued a September 4, 2019 order that: 1) denied defendant's request that plaintiff contribute to the under-withholding or untaxed income on dividends and capital gains related to account numbers 4052 and 3772, 2) granted plaintiff's request to enforce certain provisions of the MSA, 3) denied

A-1240-19

defendant's request for attorneys' fees, and 4) awarded plaintiff $5000 in attorneys' fees.

In the court's corresponding written statement of reasons, it noted that defendant was assessed additional state and federal taxes associated with account numbers 4052 and 3772 "because most of the marital assets divided were attached to his social security number . . . ." The court explained, however, that it could not determine based on the motion record precisely how much of the disputed tax liability related to the parties' marital assets.

Relying on paragraph 38 of the MSA, the court found that defendant exercised the stock options "eight . . . months prior to the execution of the MSA" and concluded "[d]efendant had ample time to explore all issues related to tax consequences and to further negotiate based upon the anticipated tax burden." In this regard, the court explained that the MSA called for the division of accounts "in-kind" and that defendant "should have known that taxes would be assessed against him."

The court reasoned that paragraph 14 did not include "language associated with . . . allocating the tax burden" but instead called for the division of funds after executing the options. The court found that because paragraph 14 "called for the division of cash in an account, no tax would be

7

assessed to either party on that division and [p]laintiff did not agree to be responsible for the tax associated with the exercise of the options <u>eight . . . months prior</u> to the MSA execution." The court concluded that defendant was precluded from seeking a modification of the MSA, as "[n]othing set forth by [d]efendant was an unforeseeable consequence or should have been unknown to him." With regard to counsel fees, the court found defendant breached the terms of the MSA and awarded fees associated with plaintiff's enforcement efforts.

Defendant moved for reconsideration and certified that he understood paragraph 14 to require both parties to be "equally responsible for the capital gains taxes and taxes on dividends emanating" from those accounts. He maintained that the parties' intent was memorialized in the language of paragraph 14 that the investment accounts would be divided in kind in order to "equalize the potential taxes and/or losses to each party." He further argued that at the time of MSA the parties did not know of the embedded 2018 tax liability associated with their investment accounts.

Plaintiff opposed the application and filed a cross-motion for attorneys' fees associated with the reconsideration application. As to the intent of paragraph 14, she certified that contrary to defendant's understanding:

Paragraph 14 is addressing the "in--kind" distribution of investments, so that both . . . [d]efendant and [she] would receive one half of all stocks and other investments when dividing the accounts. The purpose of having an "in-kind" distribution is to ensure that in the future [they] would have similar tax treatment for the income generated by those assets after the division. Paragraph 14 is contemplating future tax consequences associated with the division of these assets; that is precisely why the [MSA] says, "The assets in the above-listed investment[] accounts shall be equally divided 'in-kind' between the parties to equalize the potential taxes and/or losses to each party."

In a November 8, 2019 order and accompanying written statement of reasons, the court denied defendant's motion for reconsideration. The court interpreted the phrase in paragraph 14 requiring the "assets . . . [to] be equally divided 'in kind' between the parties to equalize the potential taxes and/or losses to each party," to mean "that once the parties divide . . . the accounts, any future sales of the assets would contemplate the future tax consequences . . . ."

Finally, the court rejected plaintiff's request for counsel fees and concluded that despite its disagreement with defendant's arguments, "[d]efendant did not file [the] motion in bad[ ]faith." This appeal followed.

On appeal, defendant contends the court improperly interpreted the MSA contrary to New Jersey law and erred in failing to require plaintiff to reimburse

him for fifty percent of the taxes assessed against him with respect to account numbers 3772 and 4052. Specifically, he argues the court erred by: 1) failing to "consider the MSA as a whole," 2) not "ascertain[ing] the parties' intent and effectuat[ing] that intent," 3) failing to "consider ambiguit[ies]" in the MSA, 4) "ignor[ing] that the record obviously evidenced ambiguity," 5) "inexplicably constru[ing] paragraph 14 to mean 'future sales' of the assets divided in kind," 6) finding paragraph 14 "clear and unambiguous" despite "ascrib[ing] a meaning to [it] different than that of both [defendant] and [plaintiff]," and 7) failing to hold a plenary hearing.[1] As noted, in her cross-appeal, plaintiff contends the court erred in refusing to award her attorneys' fees associated with her reconsideration application.

## II.

We begin with an examination of the applicable legal principles. As the issue before us involves the interpretation and construction of a contract, our review is de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); Kaur v. Assured Lending Corp., 405 N.J. Super. 468,

---

[1] We note that defendant filed an application to supplement the record. We deferred adjudication of the motion in order to consider the motion in the full context of the arguments on appeal. We now grant the motion and conclude it does not alter our decision.

474 (App. Div. 2009) (reviewing the enforcement of a settlement agreement de novo).

New Jersey has long espoused a policy favoring the use of consensual agreements to resolve controversies, and "[s]ettlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (citation omitted). "An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute" and "is governed by basic contract principles." Id. at 45.

"Among those principles are that courts should discern and implement the intentions of the parties," and not "rewrite or revise an agreement when the intent of the parties is clear." Ibid. (citations omitted). "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid. (citation omitted). However, "[t]o the extent that there is any ambiguity in the expression of the terms of a settlement agreement, a hearing may be necessary to discern the intent of the parties at the time the agreement was entered and to implement that intent." Ibid. (citing Pacifico v. Pacifico, 190 N.J. 258, 267 (2007)).

A-1240-19

A contract is ambiguous if its terms are "susceptible to at least two reasonable alternative interpretations." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life & Cas. Ins., 828 F. Supp. 275, 283 (D.N.J. 1992)). When a contract is ambiguous in a material respect, the parties must be given the opportunity to illuminate the contract's meaning through the submission of extrinsic evidence. Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 268-70 (2006).

We are constrained to remand the matter for a plenary hearing because the parties' common intent with respect to the tax treatment of the accounts in paragraph 14 is not readily discernable from the MSA. Further, the parties submitted conflicting certifications regarding who bore responsibility for the tax liability related to the accounts listed in paragraph 14.

In this regard, plaintiff certified that the disputed language in paragraph 14 related to any future tax liability incurred as a result of the in-kind distribution and did not address any retroactive tax liabilities. She further maintained that in other provisions of the MSA, the parties clearly allocated their respective responsibilities for taxes and similar liabilities and paragraph 14 contained no such explicit language. Finally, she argued that the MSA was a negotiated and integrated contract and it would be unfair to require her to

12

pay the tax liability associated with accounts numbers 3772 and 4052 as she forfeited the right to open-duration alimony and to challenge defendant's alleged improper dissipation of marital assets.

In his competing certification, defendant maintained that the language in paragraph 14 clearly required the parties to be jointly responsible for embedded taxes and the use of the word "potential" related to the parties' tax liability, which at the time the parties' signed the MSA was unknown. He agreed with plaintiff that other provisions in the MSA addressed the allocation of tax liabilities but argued those provisions expressed the parties' intent to share equally any associated tax liability related to the marital assets. He also contended it would be inequitable to require him to distribute the gross account values of the investment accounts under the circumstances.

Defendant also disputed that plaintiff had a right to an open duration alimony award as he was unemployed, and plaintiff was working. Finally, he denied improperly dissipating marital assets.

In the face of these competing certifications, the court resolved the disagreement by interpreting the disputed language in paragraph 14 to apply only to future tax liabilities, stating that "once the parties divide[d] 'in kind' the accounts, any future sales of the assets would contemplate the future tax

13

consequences." In our view, a plenary hearing was required to resolve issues regarding the parties' intent as to their respective responsibility for the taxes related to the investment accounts in paragraph 14. We reach this conclusion because the MSA is not clear and unambiguous on this point and is subject to two different, reasonable interpretations each supported by the parties' competing certifications. Indeed, the text of the MSA does not clearly limit the parties' tax liabilities to "future sales" as the court concluded, or to "the income generated by these assets after the division" as plaintiff certified.

Finally, because the court's award of $5000 in attorneys' fees was based in part on defendant's failure to comply with paragraph 14, we vacate that part of the September 4, 2019 order awarding plaintiff counsel fees. Any fee request and award may be reconsidered, as appropriate, on remand.

III.

In her cross-appeal, plaintiff contends the court abused its discretion in denying her request for counsel fees and costs associated with opposing defendant's motion for reconsideration. Specifically, plaintiff maintains "[d]efendant has not acted in good faith" and "he is not complying with other terms of the MSA unless and until the tax issues are resolved." Plaintiff also relies on paragraph 40 of the MSA which allows for attorneys' fees and costs

14

"[s]hould either party fail to abide by the terms of [the MSA]."  We are not persuaded by these arguments.

An award "of counsel fees is discretionary, and will not be reversed except upon a showing of an abuse of discretion."  Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011) (citation omitted).  Rule 5:3-5(c) lists nine factors the court must consider in making an award of counsel fees in a family action.

Essentially:

> [I]n awarding counsel fees, the court must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.
>
> [Mani v. Mani, 183 N.J. 70, 94-95 (2005) (emphasis removed) (citations omitted).]

Here, the court made a specific finding that defendant's motion for reconsideration was not filed in bad faith.  Further, there was no dispute in the record that the parties were able to pay their respective counsel fees with respect to the reconsideration application, each having received approximately $2 million in marital assets, exclusive of retirement accounts.  We are satisfied that the court did not abuse its discretion in denying plaintiff's fee request.

15

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. Nothing in our opinion should be interpreted as an expression of our views of the outcome of the remanded proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1240-19